COMMISSIONER OF INSURANCE v ADVISORY BOARD OF THE
MICHIGAN STATE ACCIDENT FUND

Docket Nos. 94712, 103942. Submitted June 9, 1988, at Lansing.
Decided December 19, 1988. Leave to appeal applied for.

The Commissioner of Insurance and others filed suit against the
Advisory Board of the Michigan State Accident Fund and
others in Ingham Circuit Court requesting that the court
declare as a matter of law that the insurance commissioner had
supervisory and administrative control over the Accident Fund
and that the fund is a state agency which is subject to the
jurisdiction of the Civil Service Commission. Defendants filed a
counter-complaint requesting five declaratory judgments: (1)
that the Advisory Board has the responsibility and authority to
hire fund employees and set their compensation; (2) that the
Advisory Board may unilaterally approve and declare divi-
dends; (3) that the Advisory Board has exclusive power to set
fund premium rates; (4) that the Advisory Board is responsible
for managing fund business and affairs; and (5) that the state
has no equity interest, or interest other than as a trustee, in
the fund's monies, reserves, or surplus. Defendants also sought
to file a claim for money damages under 42 USC 1983. The
court denied defendants permission to file the claim under 42
USC 1983. Plaintiffs consented to a circuit court order stating
that the state has no equity interest of any nature in the
monies, reserves, or surplus of the Accident Fund. Following
trial, the court, Carolyn Stell, J., held that the fund is a state
agency whose employees are subject to civil service classifica-
tion and that the Advisory Board has no authority to hire
independent consultants, attorneys, or actuaries or to declare
dividends to fund members. Defendants filed two separate
appeals, one from the court order granting declaratory and

REFERENCES

Am Jur 2d, Civil Service § 10.

Am Jur 2d, Insurance §§ 36, 1850.

Am Jur 2d, Motions, Rules and Orders § 45.

Am Jur 2d, Workmen's Compensation §§ 659 et seq.

See the Index to Annotations under Civil Service; Insurance; Judg-
ments, Orders and Decrees; Jurisdiction; Workers' Compensation.

injunctive relief to plaintiffs and enjoining defendants from collecting a rate increase implemented by defendants without the approval of the Commissioner of Insurance and the other from the order determining that the commissioner had supervisory and administrative control over the fund and that the fund is a state agency whose employees are subject to civil service classification. The appeals have been consolidated.

The Court of Appeals *held:*

1. The Commissioner of Insurance has the authority to establish the premium rates to be charged by the Accident Fund.

2. The Accident Fund is not denied equal protection by the statutory scheme as a result of its being subjected to a different system of rate regulation than its competitors. The fund is a state agency and, therefore, is quite properly subject to different regulations and control than private insurance companies.

3. The trial court did not abuse its discretion by entering a permanent injunction enjoining defendants from implementing their unauthorized May 1, 1986, rate increase.

4. The trial court correctly determined that the Accident Fund is a state agency or instrumentality whose employees are subject to the jurisdiction of the Civil Service Commission.

5. Except to the extent that one or more positions within the Accident Fund are established as exempt positions as provided for in the Michigan Constitution, the employees of the Accident Fund are required to be classified into the state civil service.

6. To the extent that the Workers' Disability Compensation Act grants authority to either the Commissioner of Insurance or the Advisory Board to hire employees or set compensation rates which is inconsistent with the authority of the state Civil Service Commission under Const 1963, art 11, § 5, those provisions of the act are unconstitutional.

7. The Insurance Code does not prohibit the Commissioner of Insurance from controlling the affairs of the fund.

8. The trial court did not err in holding that the Advisory Board did not have the authority to hire independent legal counsel or to issue dividends without the commissioner's approval. The board has no authority other than to authorize the hiring of employees by the commissioner and to advise the commissioner in the administration of the affairs of the fund.

9. The trial court did not err in denying defendants' demand for a jury trial. There is no right to a jury trial where the relief sought is equitable in nature.

10. The trial court did not err in not permitting defendants' claim for money damages for violation of 42 USC 1983. Claims

seeking money damages from the state must be brought in the Court of Claims.

11. The trial court correctly determined that the state has no interest in the funds' monies, assets, or surplus.

Affirmed.

1. INSURANCE — STATE ACCIDENT FUND — PREMIUM RATES — COMMISSIONER OF INSURANCE.

The Commissioner of Insurance has the authority to set the premium rates for workers' compensation insurance provided by the State Accident Fund (MCL 418.701; 418.711, 418.715; MSA 17.237[701], 17.237[711], 17.237[715]).

2. CIVIL SERVICE — STATE ACCIDENT FUND.

The State Accident Fund is a state agency or instrumentality whose employees, except to the extent that one or more positions within the fund are established as exempt positions as provided for in the Michigan Constitution, are required to be classified into the state civil service (Const 1963, art 11, § 5; MCL 418.701 *et seq.*; MSA 17.237[701] *et seq.*).

3. CIVIL SERVICE — CONSTITUTIONAL LAW.

The Legislature cannot by statute usurp the constitutional authority of the state Civil Service Commission (Const 1963, art 11, § 5).

4. INSURANCE — STATE ACCIDENT FUND ADVISORY BOARD.

The only authority specifically granted by statute to the State Accident Fund Advisory Board is the power to authorize the Commissioner of Insurance to hire employees and to advise the commissioner regarding the means and methods of administering the affairs of the fund (MCL 418.741, 418.755; MSA 17.237[741], 17.237[755]).

5. EQUITY — JURY — DECLARATORY AND INJUNCTIVE RELIEF.

There is no right to a jury trial where the relief sought is equitable in nature; an action for declaratory and injunctive relief is equitable in nature.

6. COURTS — COURT OF CLAIMS — JURISDICTION.

The Court of Claims has exclusive jurisdiction over claims seeking money damages from the state (MCL 600.6419; MSA 27A.6419).

7. INSURANCE — STATE ACCIDENT FUND — TRUSTS.

The State of Michigan holds the assets of the State Accident Fund in trust and, through the Commissioner of Insurance and

the State Treasurer, has control over those funds and the authority to invest the funds, but it cannot withdraw money from the fund to use for any other state expenditures; those funds may be expended only to further the purpose of the State Accident Fund (MCL 418.705, 418.711; MSA 17.237[705], 17.237[711]).

8. APPEAL — FINAL ORDERS — COURT RULES.

A party may claim an appeal of right from an otherwise nonfinal order certified as a final order under MCR 2.604[A] following either the entry of the certified final order or the entry of the actual final order in the case raising any issue on appeal, including an issue related to the prior certified order.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr., Philip J. Smith,* and *Richard F. Zapala,* Assistant Attorneys General, for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *Theodore W. Swift, James D. Adkins, William K. Fahey* and *Lawrence B. Lindemer*), for defendants.

Before: DANHOF, C.J., and SAWYER and D. R. FREEMAN,* JJ.

SAWYER, J. In this consolidated appeal, defendants appeal from orders of the circuit court (1) granting declaratory and injunctive relief to plaintiffs and enjoining defendants from collecting a rate increase implemented by defendants without the approval of the Commissioner of Insurance (No. 94712) and (2) determining that the Commissioner of Insurance had supervisory and administrative control over the fund and that the fund was a state agency whose employees are subject to civil service classification (No. 103942). We affirm.

The parties have engaged in an ongoing dispute concerning who has control over the State Accident Fund. In essence, plaintiffs take the position

---

* Circuit judge, sitting on the Court of Appeals by assignment.

that the fund is a state agency subject to the control and supervision of the Commissioner of Insurance and whose employees are subject to classification under the civil service system. Defendants, on the other hand, have taken the position that the fund is an autonomous body governed by its Advisory Board, whose employees are not subject to state civil service rules, and that the Advisory Board determines the rates charged and that the authority of the Commissioner of Insurance over the fund consists of only those general powers possessed by the commissioner over all insurance companies licensed to do business in the State of Michigan.

This controversy began in 1976, when the Attorney General concluded that the fund was a state agency and that the fund's employees are subject to civil service classification under Const 1963, art 11, § 5. OAG 1975-1976, No 5147, pp 695-698 (December 7, 1976). The Civil Service Commission made a plan to classify fund employees into the civil service, but that plan was never implemented.

Since the 1976 Attorney General opinion, the parties have engaged in numerous maneuvers to support their respective positions. In May, 1985, defendant Advisory Board changed the fund's name to "Accident Fund of Michigan" and instructed fund employees not to use the word "state" when referring to the fund. Defendant Advisory Board also adopted new bylaws in 1985, which rescinded previous bylaws referring to the Commissioner of Insurance. In 1983, then Commissioner of Insurance Baerwaldt had placed a deputy commissioner in the fund's offices to aid in the commissioner's administration of the fund. Fund employees on the Advisory Board refused to cooperate with this deputy commissioner, who was

eventually removed by the board. There has been a continuing controversy over setting the fund's premium rates and over issuing dividends to the fund's members. Neither side has cooperated with the other despite numerous circuit court orders.

Litigation was commenced by plaintiffs' filing a complaint for injunctive and declaratory relief in the circuit court on July 20, 1984. Plaintiffs requested that the circuit court declare as a matter of law that (1) plaintiff insurance commissioner had supervisory and administrative control over the fund and (2) that the fund is a state agency which is subject to the jurisdiction of plaintiff Civil Service Commission. On April 22, 1986, defendants filed a counter-complaint requesting five declaratory judgments: (1) that the Advisory Board has the responsibility and authority to hire fund employees and set their compensation; (2) that the Advisory Board may unilaterally approve and declare dividends; (3) that the Advisory Board has exclusive power to set fund premium rates; (4) that the Advisory Board is responsible for managing fund business and affairs; and (5) that the state has no equity interest, or interest other than as a trustee, in the fund's monies, reserves, or surplus. Defendants also sought a claim for money damages under 42 USC 1983. The trial court granted defendants leave to amend their pleadings by adding the five counts requesting declaratory judgment as a counter-complaint, but denied defendants permission to file the sixth count, alleging a violation of 42 USC 1983.

Meanwhile, consistent with its position that it was an autonomous entity, on February 10, 1986, defendant Advisory Board informed plaintiff Commissioner of Insurance that it had set new insurance rates for the Accident Fund to be effective April 1, 1986. These rates involved an overall

increase of approximately 23.3 percent. Plaintiff commissioner responded on March 28, 1986, by informing defendants that he alone had the power to establish the fund's rates, but that he would consider defendants' proposal of new rates as their advice in reaching his decision. Ultimately, after consultation with an actuary, the commissioner refused to grant the rate increase. However, defendants refused to follow the instructions by the commissioner to retract the notice of the rate increase given to its customers. The circuit court ultimately agreed with the Commissioner of Insurance and enjoined defendants from collecting the rate increase. That order was, however, stayed pending disposition on appeal and the rate increases have been collected and paid into an escrow account.

Meanwhile, in the principal litigation, the matter proceeded to trial and, following the taking of evidence, plaintiff consented to a circuit court order on Count v of defendants' counter-complaint, consistent with a prior consent judgment in federal court between the parties, which declares that the state has no equity interest, of any nature, in the monies, reserves, or surplus of the Accident Fund. However, with respect to the remaining claims of the parties, the trial court determined that the fund is a state agency whose employees are subject to the civil service classification and that the Advisory Board has no authority to hire independent consultants, attorneys, or actuaries or to declare dividends to fund members. Defendants now take this appeal.

We turn first to the question whether workers' compensation insurance rates for the State Accident Fund are set by the Commissioner of Insurance under Chapter 7 of the Workers' Disability Compensation Act or by the fund's Advisory Board

under Chapter 24 of the Insurance Code. For reasons to be discussed below, we conclude that the Commissioner of Insurance has the authority to set the premium rates.

The Commissioner of Insurance relies upon MCL 418.715; MSA 17.237(715), which grants the commissioner the authority to set premium rates and adjust those rates from time to time as may be necessary:

> The commissioner may classify the establishments or works of such employers in groups in accordance with the nature of the business in which they are engaged and the probable risk of injury to their employees under existing conditions. He shall determine the amount of the premiums or assessments which employers shall pay the accident fund, may prescribe when and in what manner the premiums and assessments shall be paid, may change the amount thereof in respect to any or all of such employers as circumstances may require and the condition of the respective plants, establishments or places of work in respect to the safety of their employees may justify, but all such premiums or assessments shall be levied on a basis that shall be fair, equitable and just as among such employers.

We also note that MCL 418.711; MSA 17.237(711) declares that the Accident Fund shall be neither more nor less than self-supporting and that the premiums or assessments levied for such purpose are subject to readjustment by the commissioner as may be necessary. Additionally, MCL 418.701; MSA 17.237(701) creates the Accident Fund "to provide workmen's compensation insurance for employers under the supervision of the commissioner of insurance . . . ."

Defendants, on the other hand, rely on Chapter 24 of the Insurance Code, which establishes the

mechanisms by which insurance companies file their insurance rates with the Commissioner of Insurance. Specifically, MCL 500.2406; MSA 24.12406 requires insurers providing workers' compensation coverage to file their rates and rating systems with the Commissioner of Insurance:

> (3) Every insurer with regard to worker's compensation insurance in this state shall file with the commissioner all rates and rating systems. Every insurer that insures worker's compensation in this state on the effective date of this subsection shall file the rates not later than the effective date of this subsection.
>
> (4) Except as provided in subsection (3), the rates and rating systems regarding worker's compensation insurance shall be filed not later than the date the rates and rating systems are to be effective. These filings shall be considered to meet the requirements of this chapter unless and until the commissioner disapproves a filing pursuant to section 2418.

Furthermore, MCL 500.2418; MSA 24.12418 provides a mechanism by which the Commissioner of Insurance may disapprove a rate filing:

> If at any time subsequent to approval of any filing, either by act or order of the commissioner or by operation of law, the commissioner finds that a filing does not meet the requirements of this chapter, he shall, after a hearing held upon not less than 10 days' written notice, specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter, and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of said order shall be sent to every such insurer and rating

organization. Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order.

In addition, MCL 500.2402(1)(c); MSA 24.12402(1)(c) specifically provides that the term "insurer" as used in Chapter 24 of the Insurance Code with respect to workers' compensation insurance includes the State Accident Fund.

When two separate statutes relate to the same subject matter or share a common purpose, they are considered statutes in pari materia and must be read together as constituting one law. Statutes in pari materia must be construed in such a way that each statute's provisions are given effect, if possible. *Crawford Co v Secretary of State,* 160 Mich App 88, 95; 408 NW2d 112 (1987); *Michigan Humane Society v Natural Resources Comm,* 158 Mich App 393, 401; 404 NW2d 757 (1987). Both Chapter 7 of the Workers' Disability Compensation Act and Chapter 24 of the Insurance Code relate to the subject matter of setting workers' compensation insurance rates for the Accident Fund and are, therefore, statutes in pari materia which must be construed together as one law, with effect given to each chapter's provisions.

Chapter 24 of the Insurance Code provides a broad framework by which casualty insurance carriers, including, but not limited to, workers' disability carriers, can establish rating systems and premium rates and file those systems and rates with the Commissioner of Insurance. The statutory framework also establishes a method by which the commissioner may review those filings and reject them as not complying with the provisions of the act. Chapter 24 does not, however, address the issue of which person or body sets and files rates for the Accident Fund. Turning to Chap-

ter 7 of the disability act, however, the provisions of that chapter, as indicated above, do specify that the Commissioner of Insurance possesses the authority to establish the premium rates for the Accident Fund.

We see no inconsistency between the two statutes. Chapter 24 of the Insurance Code is a very broad statute which addresses a range of issues relating to insurance rates and the classification of customers for determining insurance rates and is not specifically restricted to workers' compensation insurance, let alone specifically addressing the Accident Fund. Chapter 7 of the disability act, on the other hand, very narrowly addresses the issue of the Accident Fund and sets forth in detail a number of provisions concerning the operation of the fund, including the authority of the commissioner to set premium rates. Where two statutes encompass the same subject matter, one being general and the other specific, the specific statute will control. *People v Morin,* 159 Mich App 582, 588; 407 NW2d 43 (1987). Since the provisions of Chapter 7 of the disability act are much more specific than the provisions of Chapter 24 of the Insurance Code with regard to the rate-setting authority of the fund, Chapter 7 of the disability act must control over Chapter 24 of the Insurance Code. Accordingly, we conclude that the Commissioner of Insurance, pursuant to the provisions of MCL 418.715; MSA 17.237(715) and MCL 418.711; MSA 17.237(711), has the authority to establish the premium rates to be charged by the Accident Fund.

Our conclusion that the authority to set rates vests with the Commissioner of Insurance does not render ineffectual the requirements of Chapter 24 of the Insurance Code. Rather, although the Com-

missioner of Insurance has the authority to establish the rates and rating classifications of the Accident Fund, that does not necessarily exclude the commissioner in establishing those rates and classifications from the requirements of Chapter 24 of the Insurance Code with respect to certain restrictions placed upon insurance carriers in establishing their rates and classifications.

For instance, MCL 500.2411; MSA 24.12411 establishes certain rules or restrictions which carriers must follow in establishing rating systems for workers' compensation insurance. Our conclusion that the Commissioner of Insurance under Chapter 7 of the disability act has the power to set rates and rating systems for the fund does not compel the conclusion that, in doing so, the commissioner is excused from following the requirements of MCL 500.2411; MSA 24.12411 or other restrictions under Chapter 24 of the Insurance Code. Indeed, the only seeming incongruity in granting the Commissioner of Insurance the authority to set rates and classifications under Chapter 7 of the disability act would be that Chapter 24 of the Insurance Code gives the power of review of those rates and classifications to the Commissioner of Insurance. Thus, one might say that granting the commissioner the authority under Chapter 24 of the Insurance Code to review the rates and classifications established by the commissioner under Chapter 7 of the disability act is akin to placing the fox in charge of the hen house. However, it is not this Court's place to opine on the legislative wisdom of not providing an effective review of the commissioner's decisions in fixing rates for the Accident Fund. The statutory scheme reflects legislative confidence in the commissioner to properly and objectively discharge his duties under both the Insurance Code and the disability act and we will

not question the Legislature's decision in this regard.[1]

Defendants also argue that the fund is denied equal protection by the statutory scheme as a result of its being subjected to a different system of rate regulation than its competitors. We initially note that defendants have not preserved this issue for appeal by first raising it in the trial court. *Cliffs Forest Products Co v Al Disdero Lumber Co,* 144 Mich App 215, 221; 375 NW2d 397 (1985). Moreover, defendants' claim is meritless since, as will be discussed below, the Accident Fund is a state agency and, therefore, is quite properly subject to different regulations and control than private insurance companies.

We next consider defendants' argument that the trial court abused its discretion by entering a permanent injunction enjoining defendants from implementing their May 1, 1986, rate increase. The issuance of an injunction is within the discretion of the trial court. *Dafter Twp v Reid,* 159 Mich App 149, 163; 406 NW2d 255 (1987). Given that plaintiffs prevail on the merits and that this case involves defendants' failure to submit to the statutory authority of the Commissioner of Insurance, rather than direct financial harm to plaintiffs, we believe that the issuance of an injunction enjoining defendants from continuing in their un-

[1] We would also note that the commissioner could, at his discretion, delegate the rate-setting authority to the fund's Advisory Board and have the board file its determinations with the commissioner for review under Chapter 24 of the Insurance Code. Thus, the fund's rates and classifications could be independently reviewed by both the Advisory Board and the commissioner. We stress, however, that the commissioner is under no obligation to do so and such a decision would be within the sole policy-making discretion of the commissioner. Indeed, such a decision would undoubtedly vary from commissioner to commissioner based upon each commissioner's individual management preferences and the current relationship between the commissioner and the Advisory Board.

authorized conduct was an appropriate remedy to be fashioned by the trial court.

Having disposed of the issues raised in Docket No. 94712, we now turn to the questions presented by the parties in Docket No. 103942, which more generally concern the scope of the authority of plaintiffs and defendants in controlling the Accident Fund. We first address the question whether the trial court correctly determined that the Accident Fund is a state agency or instrumentality whose employees are subject to the jurisdiction of the Civil Service Commission. We conclude that it did.

In determining if an entity is a state agency, the Supreme Court, in *Advisory Opinion re Constitutionality of PA 1966, No 346,* 380 Mich 554, 571; 158 NW2d 416 (1968), offered the following factors for consideration:

> We must, as has been stated, look behind the name to the thing named. We must examine its character, its relations, and its functions to determine, indeed, whether it is an agency or instrumentality of State government.

In determining whether an entity is a state agency, the decision must not rest upon the presence of one particular characteristic, but the relationships between the entity and the state and the functions performed by the entity, particularly if those functions serve a public purpose, must be considered. See *Hanselman v Wayne Co Concealed Weapon Licensing Bd,* 419 Mich 168, 186-187; 351 NW2d 544 (1984).

The evidence in the case at bar establishes that the Accident Fund is a state agency, as argued by plaintiffs, rather than a mutual insurance company under the control of the Advisory Board as

argued by defendants. We begin by noting that the Accident Fund was established under the Workers' Disability Compensation Act in legislation separate and apart from the legislation authorizing the creation of mutual insurance companies. If the Legislature had intended to create the Accident Fund as a mutual insurance company, it would stand to reason that they would do so as part of the statutes dealing with mutual insurance companies rather than as part of the statutes dealing with disability compensation.

Furthermore, the statutes controlling the Accident Fund, as discussed in part above, grant a great deal of power to the Commissioner of Insurance. Under MCL 418.701; MSA 17.237 (701), the Commissioner of Insurance is granted the power of supervision over the fund and membership in the fund is subject to compliance with rules established by the commissioner. Furthermore, investments by the fund are made in accordance with the rules and conditions prescribed by joint action of the Commissioner of Insurance and the State Treasurer and the commissioner is required to supply the state with a bond under MCL 418.705; MSA 17.237(705). As previously discussed, MCL 418.711; MSA 17.237(711) and MCL 418.715; MSA 17.237(715) vest the power to establish rating classifications and the setting of premium and assessment rates with the Commissioner of Insurance. MCL 418.741; MSA 17.237(741) requires the commissioner to keep records of all business transacted by him in administering the fund and grants him the authority to employ deputies and assistants and clerical help as may be necessary for the administration of the fund. The only authority granted to the Advisory Board under the statute is to authorize the hiring of employees under MCL 418.741; MSA 17.237(741) and to advise the com-

missioner regarding the means and methods of administering the affairs of the Accident Fund under MCL 418.755; MSA 17.237(755). We also note that when an employer purchasing insurance through the fund is in default on his premium payments, a collection action may be brought in the name of the state as the plaintiff in order to collect those payments. MCL 418.721; MSA 17.237(721). Finally, we note that the statute gives the Governor the power to certify the elections of members to the Advisory Board and to fill the vacancies that may occur in the Advisory Board between annual meetings of the members of the fund. MCL 418.755; MSA 17.237(755).

Additional evidence of the practice of the fund lead to the conclusion that the fund is a state agency. The fund is audited annually by the Auditor General and is the only insurer which receives this service. The Commissioner of Insurance has issued dividends from the fund to its members in the past and the fund continues to operate under underwriting rules promulgated by the commissioner. Additionally, past fund managers have been appointed by the Governor and Commissioner of Insurance.

Furthermore, we are not persuaded as evidence of independent status that, as pointed out by defendants, the fund is required to be self-supporting. See MCL 418.711; MSA 17.237(711). This does not indicate that the fund is an independent company; rather, it merely indicates that the Legislature wished it to be self-sufficient. Cf. *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977) (Second Injury Fund is a state insurance fund).

Given the statutory scheme outlined above, and in view of the fact that the fund serves a public purpose of providing insurance for employers

which may have difficulty finding insurance through other sources, we conclude that the Accident Fund is a state agency.

We may now turn to the question whether the fund, as a state agency, is subject to having its employees classified in the state civil service. The Michigan Constitution, in Const 1963, art 11, § 5, provides for the required classification of state employees in the civil service and exceptions from classification:

> The classified state civil service shall consist of all positions in the state service except those filled by popular election, heads of principal departments, members of boards and commissions, the principal executive officer of boards and commissions heading principal departments, employees of courts of record, employees of the legislature, employees of the state institutions of higher education, all persons in the armed forces of the state, eight exempt positions in the office of the governor, and within each principal department, when requested by the department head, two other exempt positions, one of which shall be policy-making. The civil service commission may exempt three additional positions of a policy-making nature within each principal department.

Accordingly, except to the extent that one or more positions within the Accident Fund are established as exempt positions as provided for in the constitution, the employees of the Accident Fund are required to be classified into the state civil service.

Defendants argue that the conclusion that the Accident Fund is a state agency and its employees are required to be classified into the state civil service contradicts at least two statutory provisions. First, defendants argue that such a determination is inconsistent with MCL 418.741; MSA 17.237(741), which provides that the Advisory

Board authorizes the hiring of fund employees and sets the compensation for those employees and which provides in pertinent part as follows:

> [The Commissioner of Insurance] may employ such deputies and assistants and clerical help as may be necessary and as the advisory board may authorize, for the proper administration of the accident fund and the performance of the duties imposed upon him by the provisions of this act, at such compensation as may be fixed by the advisory board and may also remove them.

The Legislature cannot by statute usurp the constitutional authority of the State Civil Service Commission. See *Civil Service Comm v Auditor General,* 302 Mich 673; 5 NW2d 536 (1942). Thus, to the extent that the disability act grants authority to either the commissioner or the Advisory Board to hire employees or set compensation rates which is inconsistent with the authority of the state Civil Service Commission under Const 1963, art 11, § 5, those provisions of MCL 418.741; MSA 17.237(741) are unconstitutional.

However, we are not convinced that the above statute is necessarily in conflict with the provisions of the constitution. Under Const 1963, art 11, § 5, appointing authorities are granted some power to create or abolish civil service positions within their department or agency:

> The appointing authorities may create or abolish positions for reasons of administrative efficiency without the approval of the commission. Positions shall not be created nor abolished except for reasons of administrative efficiency. Any employee considering himself aggrieved by the abolition or creation of a position shall have a right of appeal to the commission through established grievance procedures.

The provisions of the statute can be read consistently with the constitution as authorizing the creation or abolishment of positions within the Accident Fund at given civil service rating classifications and authorizing the filling of those classifications within the rules and regulations governing the employment of individuals subject to the civil service system. However, we again indicate that, to the extent that that statute grants powers in excess of that permitted under the constitution, those provisions of the statute are unconstitutional.

Defendants also argue that the conclusion that the Accident Fund is an agency subject to the supervision of the Commissioner of Insurance violates the provisions of MCL 500.202; MSA 24.1202, which provides that the Commissioner of Insurance "shall not be a stockholder or directly or indirectly connected with the management of affairs of any insurer." Defendants argue that, since the Accident Fund is an insurer, the Commissioner of Insurance is prohibited under the above statute from controlling the affairs of the fund. We disagree.

Statutory provisions must be read in harmony with the remainder of the statute. *Saugatuck v Saugatuck Twp,* 157 Mich App 52, 56; 403 NW2d 100 (1987). Furthermore, as discussed above, statutes are in pari materia when they relate to the same subject matter or share a common purpose and such statutes should be read together as constituting one law. *Crawford Co, supra.* Statutes in pari materia must be construed to preserve the intent of each and interpreted so that neither statute denies the effectiveness of the other. *Id.*

While the Insurance Code does treat the Accident Fund as an insurer, we believe that it would defy the intent of the Legislature to blindly treat

the Accident Fund the same in all respects as a private insurer for purposes of the Insurance Code. As a state agency, the Accident Fund does differ in many important respects from a private insurance company. Furthermore, we can presume that the Legislature intended that the Accident Fund be treated differently than a private insurer at least in some respects because, if it had not, it would have created the fund as a private insurance company rather than as a state agency. The differences between the Accident Fund and a private insurer were specifically set forth by the Legislature and include such items as administrative supervision by the Commissioner of Insurance over the Accident Fund, which would be impermissible were the fund a private insurer.

Simply put, while the Insurance Code generally denies the commissioner the authority to be involved in the management of an insurance company, the disability act specifically grants the commissioner supervisory control over the Accident Fund and, therefore, the specific provisions of the disability act take priority over the general provisions of the Insurance Code. *Morin, supra.* Accordingly, the harmonious reading of these apparently conflicting statutes is that, while the Accident Fund should generally be treated the same as any other insurer under the Insurance Code, the treatment of the Accident Fund does differ in some respects as specifically set forth by statute.

We next consider defendants' argument that the trial court erred by holding that the Advisory Board did not have the authority to hire independent legal counsel or to issue dividends without the commissioner's approval. The only authority specifically granted by statute to the Advisory Board is the power to authorize the commissioner to hire employees under MCL 418.741; MSA

17.237(741), and to advise the commissioner regarding the means and methods of administering the affairs of the fund under MCL 418.755; MSA 17.237(755).

The powers of a board created by statute are limited to those powers conferred expressly by statute or by necessary and fair implication of the statute and those powers should not be extended by implication beyond what is necessary. *Coffman v State Bd of Examiners in Optometry,* 331 Mich 582, 590; 50 NW2d 322 (1951); *Michigan Humane Society, supra* at 406-407. In the case at bar, the disability act does not grant the Advisory Board either the authority to hire employees, including an independent counsel, or to declare dividends. The hiring authority is granted to the Commissioner of Insurance, subject to the authorization of the Advisory Board, under MCL 418.741; MSA 17.237(741). Similarly, the authority to adjust the amount of premiums is granted to the commissioner under MCL 418.715; MSA 17.237(715). Simply put, the Advisory Board has no authority other than to authorize the hiring of employees by the commissioner and to advise the commissioner in the administration of the affairs of the fund.

We now turn to defendants' argument that the trial court erred in denying their demand for a jury trial. We disagree. The court rule relied upon by defendants, MCR 2.605(B), does not grant the right to jury trial in declaratory judgment actions, but merely provides that a party may demand a trial by jury where a jury trial is otherwise provided for by statute.

An action for declaratory and injunctive relief is equitable in nature. *Coffee-Rich, Inc v Dep't of Agriculture,* 1 Mich App 225, 228; 135 NW2d 594 (1965). There is no right to a jury trial where the relief sought is equitable in nature, as in the case

at bar. *McDonald Ford Sales, Inc v Ford Motor Co*, 165 Mich App 321, 324; 418 NW2d 716 (1987). Accordingly, defendants had no right to jury trial in the case at bar.

Defendants next argue that the trial court erred by denying them leave to amend their pleadings to add a claim for money damages for violation of 42 USC 1983. We disagree.

The decision to allow an amendment to pleadings is left to the trial court's discretion, but leave to amend should be freely given when justice so requires. *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649; 213 NW2d 134 (1973). In the case at bar, defendants' proposed amendment to add a count under 41 USC 1983 was a claim seeking money damages. The Court of Claims has exclusive jurisdiction over claims seeking money damages from the state. MCL 600.6419; MSA 27A.6419. Since the instant case was in circuit court, rather than the Court of Claims, the trial court lacked jurisdiction over defendants' claims under 41 USC 1983. Since the court lacked jurisdiction, it properly denied defendants' motion for leave to amend its pleadings to add the count.

We now turn to the issues raised by plaintiffs in their cross-appeal. First, plaintiffs argue that the trial court erred in determining that the state has no interest in the fund's monies, assets, or surplus. We disagree. On August 21, 1986, the trial court entered an order granting defendants' motion for partial summary judgment declaring that "the State of Michigan has no equity interest, of any nature, in the monies, reserves or surplus of the Accident Fund." Plaintiffs complain that the provisions of the order are not consistent with the earlier opinion of the trial court rendered on May 14, 1985, on the same subject:

The Commissioner and the State Treasurer may invest and retain the monies of the Fund in excess of a sufficient amount of cash to pay current losses and expenses in securities as are specified by law for investment by casualty insurance companies and in accordance with rules and conditions as set forth by them.

Plaintiffs apparently accept the May 14, 1985, opinion, but object to the August 21, 1986, order to the extent that it can be interpreted to mean that the state does not control the fund's assets. While we are not convinced that the trial court's August 21, 1986, order restricts the state's authority to control the funds, we will clarify the issue to avoid any problems of misinterpretation. Clearly under the statute, the Commissioner of Insurance, acting in concert with the State Treasurer, has the authority to hold the funds of the Accident Fund and to invest those funds. MCL 418.705; MSA 17.237(705); see also *McAvoy, supra* at 450 (state control over Second Injury Fund). However, it must also be noted that MCL 418.711; MSA 17.237(711) provides that the Accident Fund shall be neither more nor less than self-supporting. We interpret this provision to mean that just as the state does not subsidize the Accident Fund, neither can it receive any "profits" from the fund to expend for other purposes. Thus, while the State of Michigan holds the assets of the Accident Fund in trust and, through the Commissioner of Insurance and the State Treasurer, has control over those funds and the authority to invest the funds, it can withdraw no money from the fund to use for any other state expenditures and those funds may only be expended to further the purpose of the Accident Fund. To the extent that the trial court's order holds otherwise, it is incorrect and it is

hereby modified to conform to this opinion. MCR 7.216(A)(1).

Before moving to the next issue, we briefly note that defendants argue that the above issue concerning the state's interest in the Accident Fund is not properly before this Court as, according to defendants, plaintiffs did not file a timely claim of appeal from the August 21, 1986, order. We disagree.

It is true that the August 21, 1986, order was certified as a final order pursuant to MCR 2.604(A). The flaw in defendants' argument is that, while a party may claim an appeal of right from an otherwise nonfinal order certified as a final order under MCR 2.604(A), the party is not required to do so at that time. Rather, the party may claim a timely appeal following the entry of the certified final order or it may wait until the actual final order in the case, being the order which disposes of all of the claims of all of the parties, is entered and then claim its appeal, raising any issue on appeal, including an issue related to the prior certified order. In the case at bar, plaintiffs chose to wait until the entry of the actual final order before claiming their appeal. They are entitled to do so and the issue concerning the correctness of the August 21, 1986, order is properly before this Court.

Plaintiffs' final issue on cross-appeal is that the trial court erred in concluding that plaintiffs had abandoned their original issue regarding the role and authority of the Advisory Board. It is unnecessary to determine whether plaintiffs have abandoned their request for a specific declaratory judgment on the issue of the Advisory Board's authority as we have found it necessary to answer that question in our analysis of the other issues raised in this case. Specifically, we have concluded that

the authority of the Advisory Board is limited to authorizing the hiring of employees and advising the Commissioner of Insurance. It is immaterial whether this decision is made in a direct response to a declaratory judgment request or as a result of determining the other issues raised. The question has ultimately been answered in either instance.

The decision of the circuit court is affirmed as clarified herein. No costs, a question of public importance being involved.