FEELEY v ACCIDENT FUND OF MICHIGAN

Docket Nos. 129699, 140116. Submitted March 11, 1992, at Lansing.
Decided April 6, 1992, at 9:20 A.M.

Frank M. Feeley, O. William Rye, and Lee McAllister brought an
action in the Court of Claims against the Accident Fund of
Michigan, alleging wrongful discharge and breach of employ-
ment contracts. The court, Peter D. Houk, J., granted summary
disposition for the Accident Fund, finding the contracts not
legally enforceable. The plaintiffs appealed.

The plaintiffs also filed an action in the Ingham Circuit Court
against the Accident Fund, seeking an order compelling arbi-
tration of the contract dispute under the arbitration clause in
the contracts. The court, Peter D. Houk, J., granted summary
disposition for the Accident Fund, concluding that the state
could not be compelled to submit to arbitration. The plaintiffs
appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. Neither the advisory board of the Accident Fund nor its
manager were authorized to hire employees. Therefore, the
contracts, which were executed by the manager and authorized
by the advisory board, were not enforceable.

2. The Commissioner of Insurance did not delegate hiring
authority to the manager. The mere appointment of a manager
does not imply the delegation of authority specifically vested by
statute in the commissioner.

3. The commissioner's authority to hire Accident Fund em-
ployees is restricted to hiring employees into positions within
the classified civil service pursuant to the rules of the Civil
Service Commission. Not even the commissioner could enter

REFERENCES

Am Jur 2d, Arbitration and Award §§ 11, 19; Civil Service §§ 8, 13,
14, 27; Master and Servant §§ 43 et seq.

Damages recoverable for wrongful discharge of at-will employee. 44
ALR4th 1131.

Modern status of rule that employer may discharge at-will em-
ployee for any reason. 12 ALR4th 544.

into the contracts at issue because they did not appoint the plaintiffs to positions within the classified civil service.

4. The plaintiffs did not have implied contracts providing for termination only for just cause.

5. Because the contracts were invalid, the arbitration clause of the contracts also was invalid. Therefore, the issue whether the state can be compelled to arbitrate is moot.

Affirmed.

1. CIVIL SERVICE — ACCIDENT FUND — COMMISSIONER OF INSURANCE.

Only the Commissioner of Insurance has the authority to hire employees of the Accident Fund of Michigan; employees of the Accident Fund must be classified in the civil service, unless hired into positions exempt from civil service classification as provided in the constitution (Const 1963, art 11, § 5).

2. MASTER AND SERVANT — BREACH OF CONTRACT OF EMPLOYMENT.

An employee who is never lawfully hired cannot be unlawfully fired.

*Adkins & Garcia* (by *James D. Adkins* and *Richard J. Garcia*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *George H. Weller,* Assistant Attorney General, for the defendant.

Before: SHEPHERD, P.J., and SAWYER and CONNOR, JJ.

SAWYER, J. In this consolidated appeal, plaintiffs appeal from an order of the circuit court (Docket No. 129699) that granted summary disposition in favor of defendant of plaintiffs' claim to compel arbitration under an employment contract and from an order of the Court of Claims (Docket No. 140116) that granted summary disposition in favor of defendant of plaintiffs' breach of contract claim. We affirm.

This case has its roots in action by the Attorney General to regain state control of the Accident Fund of Michigan. The Accident Fund was created

by statute in 1912. Sometime between then and 1976, it began to act as if it were a private, mutual insurance company that was merely authorized by statute and, at some point, believed that to be true. In 1976, the Attorney General issued an opinion that concluded that the Accident Fund was, in fact, a state agency. OAG, 1975-1976, No 5147, p 695 (December 7, 1976). Thereafter, the Attorney General (and the Commissioner of Insurance) endeavored to regain control of the Accident Fund as a state agency under the control of the Commissioner of Insurance and to have the Accident Fund's employees classified into the state civil service. This culminated with an opinion by this Court affirming the circuit court's determination that the Accident Fund was, in fact, a state agency subject to the control of the Commissioner of Insurance and that the fund's employees were state employees required to be classified into the state civil service. *Comm'r of Ins v Advisory Bd of the Michigan State Accident Fund,* 173 Mich App 566; 434 NW2d 433 (1988).

On September 21, 1989, the day after the Supreme Court denied the advisory board leave to appeal from this Court's decision, the Attorney General and the Commissioner of Insurance arrived at the Accident Fund and assumed control pursuant to this Court's decision. Thereafter, on November 2, 1989, plaintiffs, who held various positions with the Accident Fund, walked off their jobs, claiming that they had been constructively discharged. The basis of their claim of constructive discharge lies in statements by officials of the offices of the Attorney General, Commissioner of Insurance, and Department of Civil Service concerning plaintiffs' future pay cuts, transfers, and reduction in job responsibilities.

While the original dispute between the Commis-

sioner of Insurance and the advisory board was pending before this Court, plaintiffs entered into employment contracts with the Accident Fund that provided for termination only for just cause and that contained "golden parachute" clauses. These clauses provided for severance pay in the amount of two years' salary upon discharge. After leaving their jobs at the Accident Fund, plaintiffs instituted an action in the Court of Claims claiming wrongful discharge and breach of employment contracts. The trial court granted summary disposition in favor of defendant, concluding that the employment contracts were not legally enforceable. Although plaintiffs were permitted to amend their complaints to add an implied-contract claim, the trial court granted summary disposition in favor of defendant of the amended complaint as well.

Meanwhile, plaintiffs had also filed an action in the circuit court seeking an order compelling arbitration of the contract dispute under an arbitration clause in the contracts. The trial court granted summary disposition in favor of defendant, concluding that the state could not be compelled to submit to arbitration.

Separate appeals were filed with regard to these disputes. The matters have been consolidated. As will be explained below, resolution of the appeal from the Court of Claims decision will be dispositive and render the circuit court decision moot.

Plaintiffs first claim that their written contracts with the Accident Fund are enforceable and have been breached, and, therefore, they are entitled to severance pay in the amount of two years' salary, which ranges from $138,100 to $209,000. Defendant takes the position that the trial court correctly determined that the employment contracts at issue were not legally enforceable.

In light of the procedural posture of this case, this Court must assume that plaintiffs were, in fact, discharged and that their employment contracts, if enforceable, were breached.[1] Thus, the crux of the question is, Are plaintiffs' employment contracts legally enforceable? That question must be answered in the negative.

The question that must be answered is whether the advisory board or the manager of the Accident Fund who entered into the contracts on behalf of the Accident Fund had the authority to do so and thus legally bind the Accident Fund (i.e., the State of Michigan). The contracts were entered into in the name of the Accident Fund by Edwin B. Lancaster, the putative manager and chief executive officer of the Accident Fund. As might be expected, plaintiffs contend that Lancaster had the actual authority to run the Accident Fund, including the power to enter into employment contracts, while defendant maintains that Lancaster did not.

This issue may be resolved by reference to this Court's decision in *Comm'r of Ins, supra.* In *Comm'r of Ins,* this Court concluded that, except to the extent that a position within the Accident Fund may be exempt from civil service classification as provided in the constitution, employees of the Accident Fund must be classified in the civil

---

[1] In fact, the employment contracts at issue provide that the employee would be deemed to have been "involuntarily and constructively discharged" if, inter alia, there was an "involuntary and material reduction in duties, compensation, or benefits" that, plaintiffs allege, was threatened. Even more to the point, plaintiffs would be considered constructively discharged in the event of a final resolution by "court decision . . . pursuant to which the Accident Fund of Michigan is finally determined to be subject to control or regulation by any agency of the State of Michigan, except as is customary for casualty insurance carriers doing business in Michigan." Thus, under the terms of the contract, plaintiffs were constructively discharged when the Supreme Court declined to review this Court's decision in the earlier appeal.

service. *Id.* at 582. More directly to the point, this Court specifically stated:

> In the case at bar, the disability act does not grant the Advisory Board . . . the authority to hire employees . . . . The hiring authority is granted to the Commissioner of Insurance, subject to the authorization of the Advisory Board, under MCL 418.741; MSA 17.237(741). . . . Simply put, the Advisory Board has no authority other than to authorize the hiring of employees by the commissioner and to advise the commissioner in the administration of the affairs of the fund. [*Id.* at 586.]

It is thus clear that the Commissioner of Insurance, not the advisory board or the fund manager, had the authority to hire employees. Plaintiffs do not allege, however, that they were hired by the Commissioner of Insurance or that the commissioner had entered into the contracts with plaintiffs. Rather, plaintiffs specifically state in their brief on appeal that this action is based upon "contracts executed by the then Manager of the Accident Fund and authorized by the Advisory Board." Because the statutory authority to hire employees is vested in the Commissioner of Insurance, not the manager or the advisory board, the employment contracts at issue were not legally enforceable against the Accident Fund because the Commissioner of Insurance was not a signatory to them.

Plaintiffs do, however, argue that the putative manager of the Accident Fund, Lancaster, had the authority to act on behalf of the Commissioner of Insurance because he had been appointed by the commissioner to the position of manager. This argument must fail for a number of reasons. First, and foremost, plaintiffs make no showing that the commissioner had ever delegated to the fund man-

ager the statutory authority to hire employees. While, arguably, the Commissioner of Insurance could delegate his statutory authority, it is necessary to show that that has been done. The mere appointment of a manager does not imply the delegation of authority specifically vested by statute in the commissioner.

Second, Lancaster himself has previously disavowed that he is an agent of the commissioner. In an April 3, 1986, letter to the commissioner, Lancaster stated that he does not recognize the commissioner's authority over the Accident Fund or the employment of its manager:

> I have been designated Manager of the Accident Fund by the Advisory Board. . . . You should further be advised that the Advisory Board of the Accident Fund has not authorized you to employ a manager for the Accident Fund which, as you know, is a statutory prerequisite to any involvement on your part. We will proceed on the basis that your memorandum is a request for such authorization and will make that request known to the Advisory Board on the occasion of its next meeting.

Even more to the point, in an April 24, 1986, letter, Lancaster specifically disavowed that the commissioner had appointed him, or had authority to appoint him:

> For purposes of the record, I must again take issue with your statement that you orally appointed me to the position of "acting manager" of the Accident Fund. To my knowledge, no such action, either oral or written, was ever taken by you. I was employed manager of the Accident Fund by action of the Advisory Board and serve at its pleasure. It is our current mutual expectation that I will continue to so serve through December

of 1987. Any action you might take to appoint a new manager for the Accident Fund, or any other employee for that matter, without authorization of the Advisory Board, would be illegal and in violation of Section 741 of the Accident Fund enabling statute.

Thus, even if the commissioner had endeavored to delegate authority to Lancaster, it is clear that Lancaster refused to accept that delegation from the commissioner and that he exercised only that authority that was delegated by the advisory board. Because, as discussed above, the advisory board had no authority to hire employees, it could not delegate such authority to Lancaster.

Finally, even if this Court were to reach the conclusion that the Commissioner of Insurance delegated to Lancaster the authority to hire the commissioner had no authority to hire plaintiffs on the terms expressed in the contracts. More specifically, the contracts do not appoint plaintiffs to civil service positions. As explained in *Comm'r of Ins,* Const 1963, art 11, § 5 requires that all state executive branch employees be classified into the civil service, except for a limited number of employees that may be exempted from the civil service. Those exempted from civil service classification include heads of departments, members of boards and commissions, and the principal executive officer of boards and commissions heading principal departments. None of the plaintiffs fall within these categories. Const 1963, art 11, § 5 also authorizes two exempt positions within each department as requested by the department head and three exempt positions within each department as authorized by the Civil Service Commission. There is no indication that plaintiffs fall into this latter group.

Thus, as explained in *Comm'r of Ins, supra* at

582, employees of the Accident Fund, such as plaintiffs, had to be classified into the state civil service. Further, the commissioner's authority to hire Accident Fund employees is restricted to hiring employees into the classified civil service pursuant to the rules of the Civil Service Commission. *Id.* at 583-584. Thus, even the commissioner could not lawfully enter into the contracts at issue because they did not appoint plaintiffs into positions within the classified civil service.

In sum, plaintiffs look to the advisory board as the hiring authority who entered into the employment contracts with plaintiffs. The advisory board had no such authority to hire. Furthermore, although the Commissioner of Insurance did have the authority to hire, plaintiffs have made no showing that the commissioner, or his duly authorized subordinate, exercised that authority with respect to plaintiffs. Finally, even the commissioner lacked the authority to hire plaintiffs under the terms of the contracts at issue because those contracts do not constitute an appointment to a position within the classified civil service, which is the limit of the commissioner's authority.

Plaintiffs next argue that, at a minimum, they had an implied contract of employment that provided for termination only for just cause. However, this argument does not overcome the deficiencies of their argument under the express-contract issue above. Plaintiffs point to the written contracts, the Personnel Policy Manual, and the verbal assurances given by Lancaster as the basis for their reasonable expectation that their employment could be terminated only for cause.

Plaintiffs' argument, however, does not address the fact that they were never lawfully hired into their positions. As discussed above, only the commissioner had the authority to hire employees of

the Accident Fund, and plaintiffs have not shown that the commissioner hired them. In fact, plaintiffs take the position that they were hired by the advisory board. Second, at most they could have been hired into a classified civil service position, which never occurred because they left their jobs before being classified into the civil service. An employee who is never lawfully hired cannot be unlawfully fired.

Turning to the specifics of plaintiffs' allegations of an implied contract, it can be seen that plaintiffs had no reasonable basis for believing that they were anything other than employees at will. First they point to the written contracts. However, as discussed above, these contracts are invalid and, thus, cannot give rise to any employment expectations. Second, plaintiffs point to the Personnel Policy Manual, yet this actually defeats plaintiffs' position. By plaintiffs' own statement in their brief, the policy manual provided that all Accident Fund employees were employees at will unless they had a written contract to the contrary. Because the written contracts at issue are invalid, plaintiffs had no such contracts and were, even under the terms of the Personnel Policy Manual, employees at will. Finally, plaintiffs point to representations by Lancaster. However, as discussed at length above, Lancaster had no authority to hire employees or to deviate from the civil service requirements.

Moreover, the date of the contracts, April 15, 1988, is illuminating. The contracts were entered into after the entry of the circuit court's decision on October 5, 1987, in the litigation between the advisory board and the Commissioner of Insurance at issue in *Comm'r of Ins, supra.* In the circuit court decision, Judge Stell held, inter alia, as follows:

> The Court declares that the Michigan State Accident Fund is a state agency, and its employees are subject to Civil Service classification under Const 1963, art 11, sec 5.

Thus, at the time of the making of the contracts, the circuit court had opined that Accident Fund employees had to be classified into the civil service, a finding that was upheld on appeal. Certainly plaintiffs cannot claim that they had any reasonable expectation of termination only for just cause emanating from the written contracts and related representations when, several months before the signing of the contracts at issue, the circuit court had declared that they were required to be classified civil service employees.

For the above reasons, we conclude that summary disposition was properly granted.

Turning to the appeal from the circuit court decision, plaintiffs sought injunctive relief in circuit court to compel arbitration of the breach of contract dispute under an arbitration clause contained in the contracts. The trial court ruled that a state agency could not be compelled to arbitrate. However, this issue need not be addressed because it has been determined above that the contracts at issue were invalid. Because the contracts were invalid, the arbitration clause was invalid and it matters not whether the state can be compelled to arbitrate. The issue is moot.

Affirmed. Defendant may tax costs.