PEOPLE v TORRES

Docket No. 102759. Argued January 11, 1996 (Calendar No. 11). Decided
    June 25, 1996. Rehearing denied 453 Mich 1204.

Gavino Torres was convicted by a jury in the Detroit Recorder's
    Court, Daphne M. Curtis, J., of possession of more than 650 grams
    of cocaine and was acquitted of possession with intent to deliver
    over 650 grams of cocaine. Thereafter, the court vacated his con-
    viction and, sua sponte, granted him a new trial, finding that it had
    committed a prejudicial error while instructing the jury. The court
    denied the people's motion for reconsideration. The Court of
    Appeals, MACKENZIE, P.J., and D. E. HOLBROOK, JR., and MURPHY, JJ.,
    denied the people's application for leave to appeal (Docket No.
    135400), as did the Supreme Court, 437 Mich 987 (1991). Retrial of
    the simple possession charge ended in a hung jury. The Court of
    Appeals, SHEPHERD, P.J., and MARILYN KELLY and FITZGERALD, JJ.,
    denied leave to appeal (Docket No. 143436). Before the third trial
    began, the court dismissed the simple possession charge on double
    jeopardy grounds. The Court of Appeals, CAVANAGH, P.J., and CONNOR
    and BANDSTRA, JJ., in an opinion per curiam, concluded that it did
    not have jurisdiction to hear the prosecutor's appeal of the interloc-
    utory decision to grant a new trial, but reversed the dismissal, and
    remanded for another trial of the simple possession charge (Docket
    No. 150551). The people appeal and the defendant cross appeals.

    In an opinion by Justice RILEY, joined by Chief Justice BRICKLEY,
    and Justices BOYLE, MALLETT, and WEAVER, the Supreme Court *held*:

    In an appeal of right from a final order, the people may raise the
    issue of a trial court's earlier nonfinal decision to grant a new trial
    where that trial ends in a hung jury. Such an appeal does not vio-
    late a defendant's right against double jeopardy.

    1. Under MCL 770.12; MSA 28.1109, the people may take an
    appeal of right from a lower court's final order and may raise
    issues related to earlier interlocutory orders. The Supreme Court
    will only review such issues where an appellate court may fashion
    an appropriate remedy and where an error has not been cured or
    rendered moot by a later proceeding. In this case, the third trial, as
    a constructive continuation of the second, would not rectify the
    trial court's possible abuse of discretion in reversing the defend-

ant's conviction in his first trial. The alleged error did not occur in a nullity; rather, the first trial was complete and stands by itself. The error could not be corrected by the next trial, i.e., could not be cured by a later proceeding.

2. The Double Jeopardy Clause protects against both being twice punished and being twice put in jeopardy for the same offense. This constitutional right is not violated by a retrial after a conviction has been set aside because of error in the first trial, except when that error was insufficient evidence of guilt. In this case, the defendant might not have had to endure a second trial. He could have asked the appellate courts to grant the people's application for interlocutory appeal of the trial court's decision to grant a new trial before retrial. By failing to do so, he voluntarily endured the ordeal of the second trial, knowing that it might be needless if the first trial later was determined to be fair. Reinstatement of the defendant's conviction presents no threat of successive prosecutions because reversal on appeal would merely reinstate the jury's verdict.

3. The crimes of possession with intent to deliver and simple possession cannot be the same offense for purposes of double jeopardy where the jury in the first trial acquitted the defendant of one charge and then convicted him of the lesser included offense. The trial court erred in dismissing the simple possession charge on double jeopardy grounds.

Justice CAVANAGH, joined by Justice LEVIN, concurring in part and dissenting in part, stated that when a retrial ends in a hung jury, a prosecutor's appeal of right from a final order may not seek review of all previous orders issued in the case.

Appeals by the people are strictly limited by the express legislative grant. MCL 770.12(1); MSA 28.1109(1) provides for appeals of right; § 12(2) provides for appeals by leave, inter alia, from interlocutory orders, but clearly prohibits appeals that violate a defendant's right to be free from double jeopardy. An appeal of right by the people of an order granting a new trial, after the new trial has occurred and a final judgment has been reached, was not intended to be available under the statute. In this case, because the order granting a new trial was not final, the people could only seek leave to appeal the grant in the Court of Appeals. The people should not be allowed to incorporate such an appeal in a later appeal of right of the final decision because it would exceed the scope of the express legislative grant.

The prosecution's interests are adequately protected by the ability to file an interlocutory appeal. Further if the prosecution were allowed to include the new trial issue in a later appeal of right, the

retrial could be rendered meaningless. These policy considerations support a rule that would require an appeal of an order granting a new trial before the new trial occurs. Because the trial court in this case erred in dismissing the charge against the defendant on the basis of double jeopardy, the case should be remanded for retrial of the charge of possession of over 650 grams of cocaine.

Affirmed in part, reversed in part, and remanded.

209 Mich App 651; 531 NW2d 822 (1995) affirmed in part and reversed in part.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald E. Steinberg*) for the defendant.

Amicus Curiae:

*David A. Moran* for the Criminal Defense Attorneys of Michigan.

RILEY, J. In this case, we must resolve the legal questions that arise from the trial court's decision to dismiss criminal charges against defendant on double jeopardy grounds. In his first trial, defendant was convicted of simple possession of more than 650 grams of cocaine and acquitted of the charge of possession with intent to deliver over 650 grams of cocaine. The trial court vacated his conviction on the simple possession charge and granted defendant a new trial finding, sua sponte, that it had committed a prejudicial error while instructing the jury. Defendant was retried on the simple possession charge, but this trial ended in a hung jury. Before the third trial began, the trial court dismissed the simple possession charge

on double jeopardy grounds. On the people's appeal of the dismissal, the Court of Appeals refused to review the trial court's interlocutory decision to grant a new trial, but reversed the dismissal, remanding for a new (third) trial on the simple possession charge. Plaintiff appeals the Court of Appeals refusal to review the grant of a new trial, and defendant cross appeals the Court of Appeals decision to reverse and remand.

We hold that the people may properly raise the issue of a trial court's interlocutory decision, i.e., to grant defendant a new trial, in an appeal of right from the trial court's final order of dismissal. The Court of Appeals erred in deciding that it did not have jurisdiction to review this decision. Such an appeal does not violate defendant's right against double jeopardy. We reverse and remand this issue to the Court of Appeals.

On defendant's cross appeal, we agree with the Court of Appeals that the trial court erred in concluding that defendant would suffer double jeopardy if he were retried on the charge of simple possession of more than 650 grams of cocaine. He was convicted of this very crime in his first trial. His retrial for that same crime does not violate his right against double jeopardy.

Hence, we affirm in part and reverse in part the Court of Appeals decision and remand for further consideration.

#### FACTS AND PROCEDURAL HISTORY

On January 9, 1989, defendant Gavino Torres was involved in a drug transaction. According to the testimony produced at his first trial, defendant partici-

pated in a conversation with Rodney Edwards, Antonio Olmeda, and Anthony Valentin about purchasing two kilograms of cocaine. Valentin and David Crowl had arranged to sell two kilograms of cocaine to Roberto Anaya, an undercover police officer, in the parking lot of a Burger King restaurant. Defendant accompanied Edwards, Olmeda, and Valentin when they went to obtain the cocaine for this sale from Edwards' supplier. Defendant was given the cocaine from Edwards' source and then traveled with the others to a supermarket parking lot near the Burger King. Valentin testified that defendant's role in controlling the cocaine in the car en route to the parking lot was to escape with the cocaine if they were stopped by the police.[1] Valentin also testified that he, Edwards, Olmeda, and Torres planned to split the profits of the cocaine sale.

After arriving at the supermarket's parking lot, defendant, Edwards, Olmeda, and Valentin met another participant in the sale, Freddie Marshall. Defendant gave the cocaine to Edwards who, in turn, gave it to Valentin. After receiving the cocaine, Valentin left with Marshall to make the sale to Anaya, who was waiting with Crowl in the Burger King parking lot. Defendant was arrested after the sale, as were Crowl, Marshall, and Valentin.

Defendant was charged with possession with intent to deliver over 650 grams of cocaine. MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). At the

---

[1] Valentin testified that he rebuked defendant for laying the cocaine on the front seat between defendant and Edwards asking, "if the police pull us over, what are you going to do?" Valentin said that defendant answered "that's what I am here for" and explained that he would "jump out and run" if they were stopped by the police.

close of proofs in the first trial, the prosecutor asked the trial court to give the jury an instruction on the crime of simple possession of more than 650 grams of cocaine, a violation of MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i), as a lesser included offense. The trial court agreed to do so and defendant did not object.[2] The trial court also instructed the jury that the simple possession charge was a "less serious crime" than the charge of possession with intent to deliver. Defendant was convicted of simple possession, but was not convicted, and was thereby acquitted, of possession with intent to deliver.

On the day of sentencing, October 16, 1990, the trial court, sua sponte, decided to grant defendant a new trial because the court concluded that it erred in giving the simple possession charge as a lesser included offense where it carries the same penalty[3] as the possession with intent to deliver charge:

> My point is that when you ask for an instruction and the penalty is the same, at the very least the instruction should be ["]you may consider a separate offense of so and so,["] possession of over 650 grams in this case, rather than the language I gave them, ["]you may also consider *the less serious crime* of 650—possession of over 650 grams of cocaine.["] That is my point. . . . They had an alternative without a true alternative. [Emphasis added.]

On this basis, the trial court entered an order dated October 22, 1990, setting aside defendant's conviction

---

[2] In fact, defense counsel said, "I have no problem with that."

[3] At this time, these crimes carried the same penalty of life imprisonment without the opportunity for parole. This Court, in *People v Bullock*, 440 Mich 15, 37; 485 NW2d 866 (1992), concluded that such a penalty for simple possession violated the constitutional prohibition against cruel or unusual punishment. Therefore, this crime is now a parolable offense.

of simple possession of 650 grams of cocaine and ordering a new trial. The people moved for reconsideration, asking the trial court to reinstate the verdict. The trial court denied this motion.[4]

On November 30, 1990, the prosecutor filed a delayed application for leave to appeal this decision to the Court of Appeals, which denied the application on February 26, 1991 (Docket No. 135400). On May 3, 1991, this Court also denied the application.[5]

In May 1991, defendant was retried on the simple possession charge. The trial ended in a hung jury, and the trial court declared a mistrial. Thereafter, a third trial was scheduled. Before this trial began, defendant moved to dismiss the simple possession charge on the basis that another trial would violate his right protecting him from double jeopardy. At the hearing on

---

[4] At the November 9, 1990, hearing on the motion for reconsideration, the trial court stated in pertinent part:

Two things then occurred as far as I am concerned. One, [the trial court] misled a jury when [the court] use[d] the term less serious offense and it is not a less serious offense. Had the Court said this is a lesser included offense, then [the prosecutor's] previous position, [which] I believe, is still his position that a lesser included is simply one that has less elements[,] would fly, would be meritorious. In this instance, the jury was not told that this was a lesser included. The jury was told this was a lesser, a less serious offense.

The second problem that I have is that the prosecution had two chances to convict the defendant on the very same facts of an offense carrying . . . the same penalty. They had two cracks at a conviction carrying mandatory life on one set of facts. The jury in this case found the defendant guilty of possession of over 650 grams of cocaine, which meant that they did not believe that the prosecution had proven beyond a reasonable doubt that the defendant possessed with intent to deliver cocaine in an amount over 650 grams. In effect if this Court had not instructed on possession of over 650 grams, the jury might well have come back with a verdict of not guilty.

[5] 437 Mich 987.

this motion, on February 7, 1992, the trial court con-
cluded that the crime of possession with intent to
deliver more than 650 grams of cocaine, of which
defendant was acquitted in his first trial, was the
same charge as simple possession for double jeop-
ardy purposes:

> In . . . the case before the Court, there are no different
> transactions, no different facts, the retrial would be dealing
> with the same issues, the same circumstances, the same
> facts as the original trial on the original charge of posses-
> sion with intent to deliver over 650 grams of cocaine.

On February 21, 1992, the trial court entered an order
dismissing the simple possession charge against
defendant because a retrial was barred by double
jeopardy because of his prior acquittal on the posses-
sion with intent to deliver charge from the first trial.

The prosecutor brought an appeal of right in the
Court of Appeals from the February 21, 1992, order,
challenging the trial court's dismissal of the simple
possession charge. In that appeal, the prosecutor also
asked the Court to reverse the trial court's Octo-
ber 22, 1990, decision granting a new trial. In a pub-
lished opinion, the Court of Appeals decided that it
did not have jurisdiction to hear the prosecutor's
appeal of the interlocutory decision. Rather, it held
that "a prosecutor's appeal as of right from a final
order in a criminal case does not allow appellate
review of all previous orders issued in the case."[6]
Consequently, the Court of Appeals did not address
the question whether the trial court abused its discre-
tion in ordering a new trial.

---

[6] 209 Mich App 651, 658; 531 NW2d 822 (1995).

However, the Court of Appeals reversed the trial court's decision to dismiss the simple possession charge against defendant. The Court reasoned that the jury, by its verdict in the first trial, did not acquit defendant of the simple possession charge:

> A jury in the present case rationally could find that defendant possessed the cocaine, but that he did not have the intent to deliver it. Thus, the fact that defendant was acquitted of the charge of possession with intent to deliver cocaine does not bar retrial on the offense of simple possession of cocaine.[7]

Accordingly, the Court of Appeals reversed the dismissal and remanded the case for a new trial of the simple possession charge.

Subsequently, we granted plaintiff's application for leave to appeal whether the prosecutor may appeal the trial court's October 22, 1990, decision granting defendant a new trial. This Court also granted defendant's cross appeal in which he challenges the Court of Appeals ruling to remand for a new trial.[8]

### I. PEOPLE'S RIGHT TO RAISE THE ISSUE OF THE INTERLOCUTORY DECISION

### A

The Michigan Constitution does not provide the people the right of appeal in criminal cases. *People v Cooke*, 419 Mich 420, 424-425; 355 NW2d 88 (1984). Rather, the people may only file an appeal as provided by statute. MCL 770.12; MSA 28.1109. MCL 770.12; MSA 28.1109 provides that the people may

---

[7] *Id.* at 660.
[8] 450 Mich 867 (1995).

take an appeal of right from a lower court's final order:

> (1) Except as provided in subsection (2), the people of this state may take an appeal of right in a criminal case, if the protection against double jeopardy under section 15 of article I of the state constitution of 1963 and amendment V of the constitution of the United States would not bar further proceedings against the defendant, from either of the following:
>
> (a) A final judgment or final order of the circuit court or recorder's court, except a judgment or order of the circuit court or recorder's court on appeal from any other court.
>
> (b) A final judgment or order of a court or tribunal from which appeal of right has been established by law.

The statute also provides that the people may apply for leave to appeal an interlocutory order:

> (2) The people of this state may take an appeal by leave in a criminal case, if the protection against double jeopardy under section 15 of article I of the state constitution of 1963 and amendment V of the constitution of the United States would not bar further proceedings against the defendant, from any of the following:
>
> (a) A judgment or order of the circuit court or recorder's court that is not a final judgment appealable of right.
>
> (b) A final judgment entered by the circuit court or the recorder's court on appeal from any other court.
>
> (c) Any other judgment or order appealable by law or rule.
>
> (d) A judgment or order when an appeal of right could have been taken but was not timely filed.
>
> (e) A final order or judgment based upon a defendant's plea of guilty or nolo contendere.

An order granting a new trial is a nonfinal, interlocutory order. *People v Pummer*, 399 Mich 326, 332; 249 NW2d 78 (1976), overruled on other grounds in

*Cooke, supra* at 433. Thus, the trial court's October 22, 1990, decision to grant defendant a new trial was not a final order but was an interlocutory order. The prosecutor sought leave to appeal this decision, but it was denied by the Court of Appeals and by this Court. The trial court entered a final order on February 21, 1992, when it dismissed the simple possession charge against defendant on double jeopardy grounds.

B

In appealing the February 21, 1992, final order, the prosecutor asked the Court of Appeals to review the trial court's October 22, 1990, interlocutory decision granting a new trial even though this Court and the Court of Appeals earlier refused to grant leave. Thus, this Court must determine whether MCL 770.12; MSA 28.1109 authorizes the people to raise the issue of an earlier interlocutory order when bringing an appeal of right from a final order.

On its face, the statute provides that the people may appeal of right a final order, but it does not state whether the people may also appeal a trial court's earlier decisions entered as nonfinal orders in appealing the final order. The statute, under subsection 2(a), does provide that the people may appeal by leave a trial court's decision to grant a new trial for a defendant. However, this provision does not indicate that the people are forbidden from raising an interlocutory decision granting a new trial when they appeal a final order of right.

In order to determine whether the Legislature intended to make an interlocutory order reviewable in an appeal of right, we may examine the statute's legis-

lative history to understand its purpose. Before MCL
770.12; MSA 28.1109 was revised in 1988, the statute
only provided the people an appeal when a trial court
construed the validity of a criminal statute or when a
trial court decision was issued before jeopardy
attached.[9] In *Cooke*, this Court held that the people
could appeal a decision only in the limited circum-
stances provided by the statute. *Id.* at 433. The deci-
sion in *Cooke* eliminated the possibility that the peo-
ple could appeal by leave the decision of a trial court
to grant a defendant a new trial. *In re People v Bur-
ton*, 429 Mich 133, 141; 413 NW2d 413 (1987).[10]

As the Court of Appeals noted, prosecutors
attempted to circumvent this limitation by filing a
complaint for superintending control in order to con-

---

[9] Before 1988, MCL 770.12; MSA 28.1109 provided in pertinent part:

(1) An appeal may be taken by and on behalf of the people of
this state from a court of record in all criminal cases, in any of the
following circumstances:

(a) From a decision or judgment quashing or setting aside an
indictment, information, or other charging instrument, or a count
thereof, where that decision or judgment is based upon the invalid-
ity or construction of the statute upon which the indictment, infor-
mation, or other charging instrument is founded.

(b) From a decision arresting a judgment of conviction or
directing a judgment of acquittal for insufficiency of the indict-
ment, information, or other charging instrument, where the deci-
sion is based upon the invalidity or construction of the statute
upon which the indictment, information, or other charging instru-
ment is founded.

(c) From a decision or judgment sustaining a special plea in bar,
when the defendant has not been put in jeopardy, or from another
order of the court relative to admission of evidence or proceedings
had or made before the defendant is put in jeopardy.

[10] See also *People v Hinerman*, 420 Mich 851; 358 NW2d 894 (1984)
("The Court of Appeals had no authority to entertain the prosecution's
appeal of the trial court's decision to grant a new trial since MCL 770.12;
MSA 28.1109 does not permit such an appeal under the circumstances of
the case").

test orders granting a new trial.[11] However, in *Burton*, *supra* at 142-144, this Court concluded that an order of superintending control should not be used to circumvent the will of the Legislature. We held that this extraordinary remedy was not warranted where the people wished to appeal a trial court's order granting a new trial.

In response to this Court's ruling in *Cooke*, the Legislature enacted 1988 PA 66, revising MCL 770.12; MSA 28.1109, to give the people the same essential right to appeal and seek leave as a defendant enjoys, within the limits of the constitutional prohibition against double jeopardy.[12]

C

Since the Legislature intended to provide the people with the same right as a criminal defendant on appeal, we must examine the provisions that authorize a defendant to appeal a final decision in order to determine whether a defendant may appeal interlocutory decisions when he appeals a final order of right.

The Michigan Constitution provides in art 1, § 20 that "the accused shall have the right to . . . have an appeal as a matter of right . . . ." In MCL 600.308; MSA 27A.308, the Legislature has provided for the jurisdiction of the Court of Appeals to hear appeals by a criminal defendant, as well as for parties in civil

---

[11] See *People v Reed*, 198 Mich App 639, 643; 499 NW2d 441 (1993), aff'd 449 Mich 375; 535 NW2d 496 (1995).

[12] The Senate Fiscal Agency's Analysis of House Bill 4719, completed on March 1, 1988, p 2, stated in its arguments in support of the bill:

The bill essentially would ensure that the people of the State had the same right to appeal that a defendant has, within the limits of constitutional prohibitions against double jeopardy.

cases generally. MCL 600.308; MSA 27A.308 enables a party to appeal of right a final order and apply for leave from an interlocutory order.[13]

In appealing a final order entering a conviction, a criminal defendant may raise certain trial court interlocutory decisions, e.g., admission of evidence during

---

[13] MCL 600.308; MSA 27A.308 provides in pertinent part:

(1) The court of appeals has jurisdiction on appeals from the following orders and judgments which shall be appealable as a matter of right:

(a) All final judgments from the circuit court, court of claims, and recorder's court, except judgments on ordinance violations in the traffic and ordinance division of recorder's court and final judgments and orders described in subsection (2).

\* \* \*

(2) The court of appeals has jurisdiction on appeal from the following orders and judgments which shall be reviewable only upon application for leave to appeal granted by the court of appeals:

\* \* \*

(e) Any other judgment or interlocutory order as determined by court rule.

Pursuant to subsection (2)(e) of § 308, MCR 7.203(B)(1) provides that a party may appeal by leave "a judgment or order of the circuit court, court of claims, and recorder's court which is not a final judgment appealable by right . . . ."

This Court has also provided for review by right in MCR 7.203(A), which provides in pertinent part:

(A) The court has jurisdiction of an appeal of right filed by an aggrieved party from the following:

(1) A final judgment or final order of the circuit court, court of claims, and recorder's court, except a judgment or order of the circuit court or recorder's court

(a) on appeal from any other court or tribunal;

(b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere;

(2) A judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule[.]

trial, that might have affected the outcome of the case.[14] Moreover, the Court of Appeals has also recently held that a party on appeal from a final order in a civil case is "free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992), citing *Dean v Tucker*, 182 Mich App 27, 31; 451 NW2d 571 (1990).[15] The Court in *Dean* had relied on *Comm'r of Ins v Advisory Bd of the Michigan State Accident Fund*, 173 Mich App 566, 589; 434 NW2d 433 (1988).

However, the Court of Appeals in the present case refused to follow *Dean* in the criminal context, relying instead on *Adams v Perry Furniture Co (On*

---

[14] See *People v Bahoda*, 448 Mich 261, 288-293; 531 NW2d 659 (1995) (reversing the Court of Appeals decision, and reinstating the defendant's conviction where the admission of testimony was not an abuse of discretion); *People v Fisher*, 439 Mich 884; 476 NW2d 889 (1991) (peremptory reversal of the defendant's conviction because of the admission of prejudicial hearsay evidence). Similarly, in a case filed before the passage of the Michigan Constitution in 1963, this Court expressly held that a party in a civil action, in an appeal of right from a final order, may seek review of an interlocutory order leading to that final order. See *Tomkiw v Sauceda*, 374 Mich 381, 385; 132 NW2d 125 (1965). See also 7A Callaghan's Michigan Pleading & Practice (2d ed), § 57.101, pp 554-555:

> [T]he general rule is that where an appeal is taken from a final judgment, all previous orders connected with the judgment and affecting the merits are reviewable, if properly brought before the appellate court. Generally, therefore, interlocutory orders leading up to the final judgment are reviewable on an appeal from that final judgment.

Citing, among other cases, *Benedict v Thompson*, 2 Doug 299, 306 (Mich, 1846) ("Without pretending to lay down any general rule on the subject, it may, I think, be safely affirmed, that where a final decree is the subject of appeal, this court will review all previous orders connected with such decree, and affecting the merits"). See also 2 Michigan Law & Practice, Appeal, § 301, p 179.

[15] Stated another way, the Court of Appeals has held that all prior non-final rulings and orders are "incorporated" into the final judgment and are finalized for purposes of appeal. *Washington v Starke*, 173 Mich App 230, 241-242; 433 NW2d 834 (1988).

*Remand)*, 198 Mich App 1; 497 NW2d 514 (1993), and *Klco v Dynamic Training Corp*, 192 Mich App 39; 480 NW2d 596 (1991), in which the Court declined to examine an earlier order.[16] The Court of Appeals here apparently reasoned that *Dean* was no longer good law because the case on which it relied, *Comm'r of Ins, supra*, was rejected by *Adams* and *Klco, supra.*[17] Importantly, in *Comm'r of Ins, supra* at 589, the plaintiff was appealing the final order and wished to raise an issue from a previous "final order," i.e., an "otherwise nonfinal order certified as a final order under MCR 2.604(A) . . . ."[18] This was the same situation in *Adams, supra* at 3-4, 8, and *Klco, supra* at 40-41. Thus, by statute, MCL 600.308; MSA 27A.308, and by court rule, MCR 7.203, the parties in *Comm'r of Ins, Adams*, and *Klco, supra*, had a right to appeal the earlier decision.

In contrast, the plaintiff in *Dean* was appealing by right the trial court's decision to grant summary disposition and, in doing so, also asked the Court to review the trial court's earlier decision refusing to extend the deadline for filing the witness list. There was no indication that this earlier decision was certified as a final order under MCR 2.604. Consequently, unlike *Adams, Klco*, and *Comm'r of Ins*, there was no other opportunity of right for the party in *Dean* to appeal the trial court's decision because it did not dispose of any claims. See *Dean, supra* at 29-31.[19]

---

[16] 209 Mich App 657.

[17] *Id.* at 657-658.

[18] MCR 2.604 allowed the trial court to certify an otherwise nonfinal order as final to permit a party an immediate appeal by right. This Court eliminated this procedure when it amended MCR 2.604 on May 16, 1995.

[19] Defendant argues that the Court of Appeals has held that a party may not seek the review of a previous order granting a new trial in appealing

Similarly, in this case, the people have not been accorded appellate review of the merits of this decision. The people attempted to do so by applications for leave, but each was denied.[20] Thus, if this Court concludes that this issue is not reviewable, then the people will not have had an opportunity for appellate review of the trial court's October 22, 1990, decision granting defendant a new trial.

In summary, a party in a civil action may raise previous interlocutory decisions when it brings an appeal of right from a final order. Likewise, a criminal defendant may raise an issue related to an interlocutory decision in its appeal of right from a final decision.[21] We conclude that the Legislature intended to provide this same right to the people in an appeal from a final order in MCL 770.12; MSA 28.1109. Thus, the people have a right to raise issues related to earlier interlocutory orders in an appeal of right from the final order.[22]

---

of right a final order, citing *Kellepourey v Burkhart*, 163 Mich App 251; 413 NW2d 758 (1987), vacated on other grounds 430 Mich 889; 423 NW2d 577 (1988). In *Kellepourey, supra* at 256, the trial court granted a new trial, but conditioned it on the plaintiff's refusal to accept the court's remittitur of the jury's verdict. The Court of Appeals noted that the plaintiff had an appeal of right from the conditional, interlocutory order and failed to take it. *Id.* at 257. In contrast, there is no question that the prosecutor in this case did not have an appeal of right from the October 22, 1990, interlocutory decision.

[20] In fact, the Court of Appeals denied the application because it was not persuaded of the "need for *immediate* appellate review." Unpublished order, entered February 26, 1991 (Docket No. 135400). Moreover, this Court's denial stated that "we are not persuaded that the question presented should *now* be reviewed by this Court." Each order suggests the possibility that the issue would be reviewable later.

[21] See *Bahoda* and *Fisher*, n 14 *supra*.

[22] The dissent concludes that under MCL 770.12; MSA 28.1109 the people may only seek redress of a trial court's interlocutory decision by asking for leave to appeal under subsection 2. See *post*, pp 79-80. This restrictive interpretation of the statute, not required by its plain language, con-

D

Defendant argues that this conclusion provides the people with a more generous opportunity to appeal than provided a defendant. On the basis of this Court's treatment of interlocutory decisions from a criminal defendant's appeal, defendant argues that the people's interests were adequately protected by the opportunity to seek interlocutory appeal, *People v Hall*, 435 Mich 599; 460 NW2d 520 (1990), and by the opportunity to seek conviction by a retrial, *People v Thompson*, 424 Mich 118; 379 NW2d 49 (1985). The general rule that we discern from these seminal cases is that this Court will only review an earlier interlocutory decision in an appeal from a final order where (1) an appellate court may fashion an appropriate remedy[23] and (2) the error has not been cured, or rendered moot, by a later proceeding. On the basis of this rule, we conclude the people may properly ask this Court to review the trial court's decision to grant a new trial.

In *Hall*, *supra* at 602, this Court addressed a question where, in an appeal from his conviction, a defendant claimed that there was inadequate admissible evidence presented at his preliminary examination to bind him over for trial. We concluded that an error at the preliminary examination stage should be examined for harmless error. *Id*. We explained that

---

tradicts the Legislature's intent to provide the people with the same right to appeal as a defendant within the limits of the constitutional prohibition against double jeopardy. See ns 12, 14.

[23] See also *People v Crawford*, 429 Mich 151, 156-157; 414 NW2d 360 (1987) (in order to obtain appellate review of a district court's interlocutory decision denying a defendant's motion to dismiss without prejudice for a procedural violation, a defendant must apply for leave before the trial begins).

"the availability of an interlocutory appeal affords protection in those cases where an innocent accused should have been screened out by the preliminary examination process." *Id.* at 615. The preliminary examination process established by statute in Michigan under MCL 766.1 *et seq.*; MSA 28.919 *et seq.* ensures that a defendant shall not suffer extended restraint of liberty following an arrest unless there has been a judicial determination of probable cause that he committed the crime for which he is held. *Id.* at 603.

However, once the matter proceeded to trial in *Hall,* there was no way that this Court could provide a remedy specific to the harm the rule sought to avoid. In the present case, this Court could fashion an appropriate appellate remedy for the alleged trial court error by reinstating the conviction. Moreover, this Court did not state that such an error was not reviewable in *Hall,* but rather that this Court would only reverse the defendant's conviction if the error prejudiced the outcome of his trial. In the present case, if the trial court did abuse its discretion in granting a new trial, the people's interests were surely prejudiced because defendant's conviction on simple possession was vacated and this charge was ultimately dismissed without a jury reaching a verdict of acquittal.

In *Thompson, supra,* the defendant was convicted of felony murder, but this conviction was reversed because of improper jury instructions. The defendant's second trial ended in a hung jury and a mistrial was declared. In his third trial, the defendant was again convicted of felony murder. This Court held that the retrial of defendant on the same charge after

a mistrial because of a hung jury did not violate his double jeopardy or his due process protections under the Michigan Constitution. *Id.* at 135-136. Also, in the second trial, the defendant moved for a directed verdict, arguing that there was insufficient evidence to convict him presented at that trial. The trial court denied the defendant's motion. This Court held that there is no requirement under art 1, § 15 (double jeopardy provision) or art 1, § 17  (due process) of the Michigan Constitution that this Court review the trial court's decision refusing to grant a directed verdict. *Id.* Defendant in the present case argues that this rule should be equally applicable to the people here, arguing that the people should not be able to appeal the trial court's nonfinal order from an earlier trial even though that decision could have prevented the retrial from occurring.

However, the trial at which the defendant moved for a directed verdict in *Thompson* ended in a mistrial. We stated in *Thompson* that "[t]he general view of a hung jury mistrial has been that it is essentially a nullity and that the subsequent retrial determines a defendant's guilt or innocence." *Id.* at 135. This Court explained that a retrial following a mistrial is treated as "a continuation of the same case." *Id.* Consequently, the error alleged from the second trial in *Thompson* was able to be rectified in the third trial, where the prosecution did produce sufficient evidence, because the third trial was considered a continuation of the second one.[24]

---

[24] Yet, this Court has allowed a defendant to challenge a trial court's interlocutory decision to grant a retrial after a mistrial caused by a prosecutor's intentional misconduct, where the defendant appealed by right his conviction secured from an error-free retrial. See *People v Dawson,*

In contrast, a third trial here, as a constructive continuation of the second, would not rectify the trial court's possible abuse of discretion in reversing defendant's conviction from his first trial. The alleged error did not occur in a "nullity," i.e., a trial that ended in a mistrial. Rather, the first trial was complete, and stands by itself. The error could not be corrected by the next trial. Hence, in this case, unlike *Thompson*, the error was not cured by later proceedings.

## II. REVIEW OF THE INTERLOCUTORY DECISION AND DOUBLE JEOPARDY

### A

Defendant argues that the decision to review an order after retrial violates his right to be free from double jeopardy because a successful appeal would mean reinstatement of his conviction from the first trial.

The United States and the Michigan Constitutions protect a person from being twice placed in jeopardy for the "same offense." US Const, Am V; Const 1963, art 1, § 15. The purpose of the double jeopardy provision is to prevent the state from making repeated attempts at convicting an individual for an alleged crime. *People v Dawson*, 431 Mich 234, 250; 427 NW2d 886 (1988). The United States Supreme Court examined the origin and history of the rule in *United States v Green*, 355 US 184; 78 S Ct 221; 2 L Ed 2d 199

---

431 Mich 234, 250; 427 NW2d 886 (1988). Such an appeal provides an analogous situation to the people's appeal in the present case. A defendant may seek to reverse a conviction from an error-free retrial because of an error in a prior proceeding that allowed the retrial to occur. Similarly, the people appeal a dismissal, asking this Court to examine an alleged error that allowed the retrial (ending in a hung jury) to occur.

(1957). As this Court quoted in *Dawson, supra* at 251, the United States Supreme Court in *Green* concluded that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* at 187-188. Thus, the Double Jeopardy Clause provides three related protections:

> "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." [*United States v Wilson*, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975), quoting from *North Carolina v Pearce*, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969), which was overruled in part on other grounds in *Alabama v Smith*, 490 US 794, 802; 109 S Ct 2201; 104 L Ed 2d 865 (1989).]

B

Defendant argues, as do the Criminal Defense Attorneys of Michigan in their amicus curiae brief, that a defendant may not be subjected to a second trial after being validly convicted in the first one. They claim that the reinstatement of defendant's first conviction would render the second trial unnecessary and would violate defendant's right to be free from retrial after conviction.

The United States Court of Appeals for the Eleventh Circuit rejected a similar argument in *United States v Martinez*, 763 F2d 1297 (CA 11, 1985). In

*Martinez*, the defendant was convicted of cocaine distribution in his first trial, but the trial court granted his motion for a new trial. On retrial, in a bench trial, the defendant was acquitted. On appeal from the judgment of acquittal, the prosecution claimed that the trial court abused its discretion in granting a new trial. In determining whether its review of this claim would violate the defendant's double jeopardy protection, the Eleventh Circuit examined the United States Supreme Court's treatment of the constitutional right and distilled this test:

> [T]he test for whether a government appeal of a judgment of acquittal is barred by the Double Jeopardy Clause is whether there will be any proceeding after a successful appeal that would require the resolution of further factual issues by the trier of fact. [*Id.* at 1309.]

On the basis of this test, the court held that the prosecution could appeal the defendant's conviction and seek reinstatement of his conviction without violating the Double Jeopardy Clause because "reversal on appeal will simply reinstate the prior judgment of conviction and not subject defendant to another prosecution." *Id.* at 1310. In fact, the court then determined that the trial court abused its discretion, reversed the judgment acquitting him, and reinstated the jury verdict finding him guilty. *Id.* at 1313, 1315-1316.[25] The United States Court of Appeals for the Fifth Circuit adopted the *Martinez* rule in a factually

---

[25] In 1984, the United States enacted PL 98-473, which, among other provisions, amended 18 USC 3731, providing the government the right to appeal a trial court's decision to grant a new trial after a verdict or judgment. *Id.* at 1307, 1308, n 11. Consequently, the United States will not likely encounter this question again after the effective date of the legislation.

similar case and also reinstated the jury verdict despite the subsequent acquittal in a bench trial. *United States v Leal*, 781 F2d 1108, 1110 (CA 5, 1986) ("This appeal, like that of *Martinez*, does not effect double jeopardy because reversal would only require reinstating the jury verdict; further prosecution would be avoided"), cert den 479 US 831 (1986).

*Martinez* is well grounded in the United States Supreme Court's examination of the Double Jeopardy Clause. In *Wilson, supra,* the Supreme Court ruled that the prosecution could appeal a trial court's decision to dismiss an indictment against a defendant because of a preindictment delay even though the jury had already found the defendant guilty of that crime. The Supreme Court reasoned that review of the trial court's order would not offend the policy against multiple prosecutions "[s]ince reversal on appeal would merely reinstate the jury's verdict . . . ." *Id.* at 344-345. Relying on *Wilson,* the Supreme Court later stated that "where a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." *United States v Martin Linen Supply Co*, 430 US 564, 569-570; 97 S Ct 1349; 51 L Ed 2d 642 (1977). The Court in *Martin Linen* noted that the double jeopardy bar was not "automatically averted" in its case because, unlike the present case, a successful appeal reversing the judgment of acquittal would necessitate another trial. *Id.* at 571. Also, in examining whether the prosecutor could appeal a trial court's decision (at the close of proofs but before a verdict) to dismiss because of the prejudice caused by preindictment delay, the Supreme Court explained that one of the principles of double jeopardy jurisprudence is that a

"judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution *when a second trial would be necessitated by a reversal.*" *United States v Scott*, 437 US 82, 91; 98 S Ct 2187; 57 L Ed 2d 65 (1978) (emphasis added).[26]

c

Defendant and the amicus curiae contend that the Eleventh Circuit in *Martinez* overlooked the Supreme Court's double jeopardy analysis in *Abney v United States*, 431 US 651; 97 S Ct 2034; 52 L Ed 2d 651 (1977). In *Abney, supra* at 653, the Supreme Court examined the question whether a trial court's pretrial order refusing to dismiss an indictment on double jeopardy grounds was a final order from which a party in federal court had a right to appeal. The defendants were convicted in the first trial, but the United States Court of Appeals for the Third Circuit had reversed the conviction because of an evidentiary error. Before retrial, the defendants moved to dismiss the indictment, claiming that double jeopardy prevented their retrial. The Supreme Court noted that the double jeopardy protection is not just a prohibition of being twice punished, but also against being twice put in jeopardy. *Id.* at 661, citing *Price v Georgia*, 398 US 323, 326; 90 S Ct 1757; 26 L Ed 2d 300 (1970). It explained that "the guarantee against double jeopardy assures an individual that, among other things, he will

---

[26] See also *Smalis v Pennsylvania*, 476 US 140, 142; 106 S Ct 1745; 90 L Ed 2d 116 (1986) ("the Double Jeopardy Clause bars an appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into further proceedings devoted to the resolution of factual issues going to the elements of the offense charged").

not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Abney, supra* at 661. For this reason, the Court concluded that the pretrial order must be immediately appealable as a "final decision" under federal statutory law, otherwise the defendant's protection against double jeopardy would be lost:

> [T]he [double jeopardy] protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs. [*Id.* at 662 (emphasis in original) (citations omitted).][27]

---

[27] In examining a similar question as the one presented in *Abney*, an apparent majority of states has concluded that *Abney* merely interpreted the federal statute governing appeals, but did not announce a constitutional requirement under the Fifth Amendment's double jeopardy provision that a state must allow a defendant to bring an immediate appeal, before (re)trial, from a trial court's refusal to dismiss on double jeopardy grounds. See *Oregon v Salzmann*, 119 Or App 217, 222-224; 850 P2d 1122 (1993); *Huff v State*, 325 Md 55, 67-73; 599 A2d 428 (1991); *Burleson v State*, 552 So 2d 186 (Ala Crim App, 1989); *State v Joseph*, 92 NC App 203, 204-206; 374 SE2d 132 (1988); *State v Miller*, 289 SC 426, 427-428; 346 SE2d 705 (1986); *State v Jenich*, 94 Wis 2d 74, 79, n 5; 288 NW2d 114 (1980); *People ex rel Mosley v Carey*, 74 Ill 2d 527, 537-540; 25 Ill Dec 669; 387 NE2d 325 (1979); *State v Fisher*, 2 Kan App 2d 353, 354-356; 579 P2d 167 (1978). Other states have held that *Abney* recognized a constitutional right to an immediate appeal. See *Nalbandian v Superior Court*, 163 Ariz 126, 128-129; 786 P2d 977 (Ariz App, 1989); *Ex parte Robinson*, 641 SW2d 552, 555 (Tex Crim App, 1982). We do not need to answer this question in resolving the present case.

The Eleventh Circuit's opinion in *Martinez* is consistent with the reasoning of *Abney*. In *Abney*, the defendants did not have to endure a second trial before they brought their appeal. In *Martinez*, the prosecution brought the appeal. Because the prosecution succeeded in its claim that the trial court's decision to grant a new trial was an abuse of discretion, the remedy was to reinstate the verdict of the first trial. The appeal did not require a retrial. Like *Abney*, the defendant in *Martinez* did not have to endure personal strain, public embarrassment, and the expense of another criminal trial because he did not suffer another prosecution. The same would be true if the people prevailed on appeal in this case. Defendant, like the defendant in *Martinez*, would have already suffered the ordeal of a second trial.[28]

However, if defendant's conviction is reinstated, the analysis from *Abney, supra* at 662, suggests that defendant, like the defendant in *Martinez*, should not have had to endure a second trial. Yet, defendant did not ask the Court of Appeals or this Court to grant leave before the second trial. Defendant would have presented the situation from *Abney* if he had asked the Court of Appeals or this Court to grant leave on the people's appeal before retrial. He would not have had to ask an appellate court to reverse the trial

---

[28] In fact, because of our decision to affirm the Court of Appeals, see part III, defendant in this case must endure the ordeal of another trial *only* if he succeeds in claiming that his double jeopardy protection prevents us from reviewing the trial court's interlocutory decision. The dissent lists five "strong policy reasons" to deny the people the right to bring this appeal because of the ordeal, cost, and waste associated with retrial. *Post*, pp 81-82. Yet, the dissent ignores the fact that an appeal by the people asking an appellate court to reinstate an original conviction will not result in new expenses or personal strain because, if the people prevail, there will be no new trial.

court's decision, but could have asked that leave be granted to ensure that the issue was resolved before he was required to endure another trial that might otherwise be needless. However, defendant did not file a brief in response to the people's application for leave to the Court of Appeals (Docket No. 135400), and did not file a response to the people's application to this Court (Docket No. 91140). A defendant is responsible for the "consequences of his voluntary choice." See *Scott, supra* at 99. Defendant did not ask appellate courts to grant leave, even though under *Abney*, his right could only be vindicated by an immediate appeal.[29] Consequently, by failing to ask the appellate courts to review this decision interlocutorily, defendant accepted the possibility that he would have his first verdict reinstated on a later appeal by the people by right. Therefore, he voluntarily endured the ordeal of a second trial, knowing that it might be needless if the first trial was determined to be fair.[30]

---

[29] See also *United States v Richardson*, 468 US 317, 320; 104 S Ct 3081; 82 L Ed 2d 242 (1984). We reiterate that we do not hold that a defendant would necessarily have a right under the Fifth Amendment, or under Michigan law, to have a double jeopardy claim heard immediately. See n 27.

[30] The dissent claims that "the defendant only consented to the retrial on the understanding that the conviction of the first trial was vacated and he would be starting with a clean slate at the retrial" and that to allow the reinstatement of the first verdict would "vitiate[ ]" his consent. See *post*, p 79, n 5. However, as the dissent itself notes, the status of Michigan law was uncertain when defendant failed to ask the appellate courts to grant the people immediate review of the first trial's validity. In failing to act, he should have been aware that, according to the Fifth and Eleventh Circuits (*Leal* and *Martinez*), the United States Constitution would allow the reinstatement of the first verdict even if the second trial resulted in an acquittal, and, consequently, that Michigan law might permit the same result if he were acquitted in his retrial. Therefore, the dissent cannot contend that defendant only consented to the second trial on the condition that the first trial's validity never be reviewed when he should have

Moreover, even if we concluded that defendant suffered a constitutional injury by enduring an "unnecessary" second trial (if the first trial was valid and fair), the injury itself would have already been sustained. This Court cannot change the reality that defendant was tried a second time. This Court cannot erase the embarrassment, expense, and ordeal of living in a continued state of anxiety created by the second trial. Our refusal to review the interlocutory decision, leaving unreviewed the trial court's determination that the first trial was unfair, would not undo the ordeal of the second trial, but would only prevent it from being (in retrospect) unnecessary. The Double Jeopardy Clause is designed to prevent the ordeal of a second trial; it is not designed to prevent such a trial from being rendered needless on appellate review. See *Abney, supra* at 661-662.[31] Defendant could only have avoided the second trial by seeking an immediate appeal. There is now no possible remedy.

D

Defendant and the amicus curiae complain that the result from *Martinez* would mean that defendant suffered a retrial after he was convicted in violation of the Double Jeopardy Clause. However, he was only retried after the first conviction was vacated. There is no dispute that the retrial itself would not violate

---

known that this trial's verdict *might* be reinstated if it was found to be fair.

[31] The dissent argues that the people's appeal "force[s] [defendant] to live in a continuing state of anxiety and insecurity regarding his future freedom," *post,* p 79, n 5, presumably because he fears that the first verdict will be reinstated. However, *Abney* makes clear that it is the "*exposure* to double jeopardy" *by a second trial* that the clause seeks to prevent, not the anxiety created by the possible reinstatement on appeal of a verdict from a trial that has already been held. See *Abney, supra* at 662.

defendant's constitutional rights where the trial court concluded that defendant was prejudiced by erroneous jury instructions. See *People v Langley*, 187 Mich App 147, 150; 466 NW2d 724 (1991), citing *Burks v United States*, 437 US 1, 14-16; 98 S Ct 2141; 57 L Ed 2d 1 (1978). In fact, the United States Supreme Court explained that where the judicial process is defective in a fundamental respect, the accused has a "strong interest in obtaining a fair readjudication of his guilt free from error . . . ." *Burks, supra* at 15.

On appeal, the people ask us to reinstate defendant's first conviction. As the Eleventh Circuit explained in *Martinez*, the reinstatement of his conviction would not offend defendant's constitutional rights because the "[g]*overnment appeal* presents no threat of successive prosecutions," *Martin Linen, supra* at 570 (emphasis added), and would not result in another prosecution, because "reversal on appeal would merely reinstate the jury's verdict . . . ." *Wilson, supra* at 344-345. Moreover, the second trial, now examined in retrospect, does not represent a second opportunity for the people to convict defendant if the first conviction was reinstated because the people did not need, or seek, a new trial. There would be no multiple punishments.

We adopt the persuasive reasoning of *Martinez* as our understanding of the protections provided by the Double Jeopardy Clause of the United States and the Michigan Constitutions, at least in this circumstance where the second trial ended in a hung jury. However, we reserve for another day the question whether this holding would govern where the people seek to reinstate a conviction from the first trial after a defendant

was retried and *acquitted* by the bench, or by a jury,[32] of the same crime in a second trial.

We conclude that the people may raise the issue of the trial court's October 22, 1990, decision to grant a new trial under MCL 770.12(1); MSA 28.1109(1) in its appeal of right of the February 21, 1992, final order. We reverse the Court of Appeals refusal to review the issue and remand the substance of the issue to give the Court of Appeals an opportunity to address it.[33]

### III. DOUBLE JEOPARDY AND DEFENDANT'S THIRD TRIAL

On cross appeal, defendant claims that the Court of Appeals erred in reversing the trial court's decision to dismiss before the third trial on double jeopardy grounds. The trial court relied primarily on *Brown v Ohio*, 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977), in which the Supreme Court held that the Double Jeopardy Clause bars prosecution for a crime where the defendant had already been convicted of a lesser included offense of that crime. The trial court also cited *Ashe v Swenson*, 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970), in which the Supreme Court held that the Double Jeopardy Clause prevents a state from subjecting a defendant to a second prosecution where an acquittal in the first trial resolved the factual question whether the defendant committed the crime charged in the second trial. Relying on these

---

[32] Notably, in both *Martinez* and *Leal*, the second trial resulting in acquittal was a bench trial rather than a jury trial.

[33] On remand, the Court of Appeals may also consider the question that defendant raises on cross appeal: whether the trial court erred in giving the lesser included instructions where the included crime carried the same penalty. Also, the Court may consider defendant's argument that the prosecution has abandoned its appeal by failing to file a transcript of the jury instructions with the Court of Appeals in accordance with MCR 7.210(B)(1)(a).

cases, the trial court concluded that the crime of possession with intent to deliver was the same as simple possession for double jeopardy purposes and that defendant's acquittal of possession with intent to deliver barred a reprosecution for the lesser included offense.

As noted earlier, the United States and the Michigan Constitutions protect a person from suffering double jeopardy for the "same offense." US Const, Am V; Const 1963, art 1, § 15. The Court of Appeals has explained, however, that this rule is not violated where a defendant is retried after his conviction is set aside because of an error in the first trial, unless the error was that there was insufficient evidence of guilt to convict the defendant. See *Langley, supra* at 150.

Defendant argues that he cannot be retried because the jury's acquittal of him on the possession with intent to deliver charge also logically required the finding that he did not possess the cocaine. Defendant explains that the jury could not rationally acquit him of possession with intent to deliver without also finding that he was not guilty of possession because the prosecution's sole factual theory alleged that defendant carried the cocaine with the intent of delivering it for the sale to Anaya. The Court of Appeals in the present case rejected this claim and distinguished *Ashe, supra,* as well as the subsequent Supreme Court case following it, *Turner v Arkansas*, 407 US 366; 92 S Ct 2096; 32 L Ed 2d 798 (1972), by concluding that a rational jury could find that defendant possessed, but did not intend to deliver, the cocaine.[34]

---

[34] 209 Mich App 660.

However, this Court need not review this conclusion because there is a more basic reason to distinguish this case from the federal ones. In *Ashe* and *Turner*, the defendant was acquitted on the same factual theory that would logically require the jury to find that he had not committed the *uncharged* crime. However, in this case, the jury explicitly rejected this possibility by convicting defendant on the very charge that defendant now claims that the jury, by its verdict, must have acquitted him. A jury's verdict need not be rationally consistent in the light of its power of leniency. *People v Lewis*, 415 Mich 443, 450-453; 330 NW2d 16 (1982); *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980).[35] Thus, unlike *Ashe* and *Turner*, this Court cannot logically deduce from the first verdict that the jury acquitted defendant on this charge because it convicted him of it.

Moreover, in *Brown*, the defendant was convicted of the lesser included crime of joyriding and subsequently tried and convicted of auto theft. The Supreme Court concluded that the two crimes of which the defendant was convicted were the "same offense" for double jeopardy purposes under the test of *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932) (different offense where each crime requires proof of an element the other does not require). However, the crimes of possession with intent to deliver and simple possession cannot be the same offense for purposes of double jeopardy where the jury in the first trial acquitted defendant of one

---

[35] Although defendant suggests that the verdict may have been the product of a compromise rather than leniency, he does not argue that he should be retried for the charges the jury could not agree on. See *Lewis, supra* at 451-452.

charge and then convicted him on the lesser included offense.[36]

The trial court erred in dismissing the simple possession charge on double jeopardy grounds. This Court affirms the Court of Appeals decision to reverse.[37]

### CONCLUSION

We conclude that, in an appeal of right from a final order, the people have the right to raise the issue of a trial court's earlier nonfinal decision to grant a new trial where that new trial ends in a hung jury. We remand the issue whether the trial court abused its discretion in granting a new trial to the Court of Appeals. Moreover, we affirm the Court of Appeals decision to reverse the trial court's decision dismissing defendant's conviction on double jeopardy grounds. Hence, we affirm in part, reverse in part, and remand for further proceedings.

BRICKLEY, C.J., and BOYLE, MALLETT, and WEAVER, JJ., concurred with RILEY, J.

CAVANAGH, J. (*concurring in part and dissenting in part*). I concur with the majority's resolution of the defendant's cross appeal because I agree that the trial court erred when it dismissed the simple possession

---

[36] Simple possession is at least a "lesser included offense" when comparing only the elements of the crimes.

[37] Defendant also argues in his cross appeal, that the trial court erred in instructing the jury in the first trial on the lesser included offense of simple possession. If there were an error, it would not justify the trial court's decision to dismiss on the basis of double jeopardy. The Court of Appeals may consider this argument regarding why the jury instructions were wrong on remand. See n 33.

charge on double jeopardy grounds.[1] However, I do not agree with the majority's analysis or holding regarding the people's appeal. Thus, I dissent from the majority's holding that, when a retrial ends in a hung jury, a prosecutor has the right to appeal a trial court's earlier interlocutory order granting a new trial in its later appeal of right of the final order entered in the case. Rather, I would adopt the holding of the Court of Appeals that a prosecutor's appeal of right from a final order in a criminal case does not allow appellate review of all previous orders issued in the case. 209 Mich App 651, 658; 531 NW2d 822 (1995).

### I. LEGISLATIVE INTENT

As noted by the majority, the Michigan Constitution does not provide for appeals by the people. Rather, the people's right to appeal derives from statute.[2] Thus, appeals by the people are strictly limited to appeals that fall within the express legislative grant. *People* v *Cooke*, 419 Mich 420; 355 NW2d 88 (1984).

The statute governing such appeals, MCL 770.12(1); MSA 28.1109(1), provides an appeal of right from a final judgment or final order entered in a criminal case.[3] While § 12(1) provides for appeals of right, § 12(2) provides the people with an appeal by leave in various circumstances, including an appeal from an interlocutory order.[4]

Moreover, § 12 clearly prohibits an appeal by the people if it would violate the defendant's right to be

---

[1] See part III.

[2] See MCL 770.12; MSA 28.1109.

[3] See *ante*, pp 51-52 (providing the express statutory language).

[4] See *id.* Appeals by the people of right and by leave in criminal cases are also limited by defendants' protections against double jeopardy.

free from double jeopardy. In this case, the defendant argues that the decision to review an order granting a new trial after retrial would violate his right to be from double jeopardy because a successful appeal would mean reinstatement of his conviction from the first trial. However, I would not decide the constitutional issue whether allowing such an appeal would violate the defendant's protections to be free from double jeopardy because I believe legislative intent and policy considerations should prevent the people from appealing in this instance.[5]

---

[5] Although I would not decide that constitutional issue in this case, I have reservations about the majority's analysis and holding on this issue. The majority holds that such an appeal does not violate defendant's right against double jeopardy, because he would not be subjected to a retrial; rather, the conviction at the first trial would be reinstated. The majority opines that at this point, the defendant would have already suffered the ordeal of a second trial. That being the case, there is now no possible remedy, because leaving unreviewed the trial court's determination that the first trial was unfair, would not undo the embarrassment, expense, and ordeal of the second trial.

My problem with that analysis is that it focuses on multiple prosecutions. However, in *Abney v United States*, 431 US 651, 661; 97 S Ct 2034; 52 L Ed 2d 651 (1977), the Supreme Court stated, quoting *Price v Georgia*, 398 US 323, 326; 90 S Ct 1757; 26 L Ed 2d 300 (1970):

"The [double jeopardy] prohibition is not against being twice punished, but against being twice *put* in jeopardy . . . . The 'twice put in jeopardy' language of the Constitution thus relates to a potential, i.e., the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried."

Thus, the focus is on the *exposure* to the strain, embarrassment, and expense of a criminal trial more than once for the same offense, regardless of the result of the trial. By reinstating the defendant's conviction from the first trial, the court would be revalidating a trial that previously had been invalidated when the judge set it aside sua sponte because of erroneous jury instructions. Although the defendant impliedly consented to the setting aside of the conviction from the first trial, he did not do so with the knowledge that the second trial might be needless if the first trial was determined to be fair. The propriety of the inclusion of an appeal of the new trial order in an appeal by right from the final judgment is an issue of first impression in Michigan. Thus, I do not believe there is sup-

Clearly, § 12(2) contemplates an appeal by leave in an appeal by the people from an interlocutory order in a criminal case; § 12(1) does not provide for an appeal of right in this situation. Although the statute does not explicitly preclude the inclusion of this issue in an appeal by the people of right, I do not believe that the Legislature intended that an order granting a new trial could be appealed by the people of right, after retrial had occurred and the case had later reached final judgment.[6] Rather, I would hold that

---

port for the majority's position that the defendant "voluntarily endured the ordeal of a second trial, knowing that it might be needless if the first trial was determined to be fair." *Ante*, p 70.

However, if the prosecution is allowed to appeal the new trial order other than interlocutorily, and if the court later determines that the new trial was erroneously granted, then that decision acts as a validation of the first trial and its resultant conviction. Double jeopardy protections are implicated because the defendant was already subjected to the second trial. In this case, the prosecution would be given two chances to convict the defendant: one, at the retrial, and two, by pursuing an appeal of the new trial order that could result in the reinstatement of the conviction. That is the scenario here. The prosecution failed to convict the defendant at the retrial and is now seeking to reinstate the original conviction.

What is important to recognize is that the defendant only consented to the retrial on the understanding that the conviction of the first trial was vacated and he would be starting with a clean slate at the retrial. If the prosecution is allowed to appeal the new trial order after the new trial occurs, the defendant's consent is vitiated. If the prosecution is allowed to take this belated appeal, the defendant's double jeopardy protections are violated because he is forced to live in a continuing state of anxiety and insecurity regarding his future freedom, a state that the clause seeks to prevent from occurring.

The majority posits that because the retrial has occurred "[t]here is now no possible remedy." *Ante*, p 71. However, the appropriate remedy is to require the prosecution to appeal interlocutorily or not at all.

[6] I note that Judge BANDSTRA, who was a panel member of the Court of Appeals in this decision, was a cosponsor of 1988 PA 66 (which revised MCL 770.12; MSA 28.1109 to broaden the scope of appeals by the people) when he was a state representative. Thus, I find persuasive his interpretation that the Legislature did not intend the statute to allow the people to include an appeal from the interlocutory order in its appeal of right of the final judgment or final order entered in the case.

because the order granting a new trial was not final, the people could seek to appeal only by filing an application for leave with the Court of Appeals. The people should not be allowed to include that appeal in its later appeal of the final decision of right, because allowing such an appeal exceeds the scope of the express legislative grant providing for appeals by the people.

## II. POLICY CONSIDERATIONS

Moreover, policy considerations clearly support this position. The strongest policy consideration supporting prohibition of the instant appeal is that the prosecution's interests are adequately protected by the ability to file an interlocutory appeal.[7] Further,

---

[7] Even where a party has a right to appeal from a final decision, this Court has limited the types of issues that may be raised in an appeal from a final decision in a criminal case. This Court has held that some issues must be raised in an interlocutory appeal, or not at all.

For example, in *People v Crawford*, 429 Mich 151, 156-157; 414 NW2d 360 (1987), this Court held that a violation of the twelve-day limit for holding a preliminary examination cannot be raised on an appeal from a final judgment, but must be raised in an interlocutory appeal before the preliminary examination, if at all, by applying for leave to appeal.

Similarly, in *People v Hall*, 435 Mich 599; 460 NW2d 520 (1990), the majority (CAVANAGH, J., dissenting), held that error in binding the defendant over for trial on the basis of inadmissible hearsay evidence did not require automatic reversal of the subsequent conviction because the defendant received a fair trial and was not otherwise prejudiced by the error. A majority of this Court remanded the case to the Court of Appeals for an analysis of whether the admission of hearsay evidence at the preliminary examination was harmless error. The majority stated:

[W]e believe the availability of an interlocutory appeal affords protection in those cases where an innocent accused should have been screened out by the preliminary examination process. [*Id.* at 615.]

Thus, although this Court analyzed the issue, it in effect held that it was too late for the defendant to raise that issue and demand the relief of automatic reversal. Rather than providing the appropriate relief for a

even if the Court of Appeals and this Court, in the exercise of discretion, decide that the appeal is not worthy of interlocutory review,[8] the prosecution still has the opportunity to obtain a conviction following the retrial of the defendant.

Additionally, there are also several other strong policy reasons for requiring a prosecutor to file only an appeal from an interlocutory order granting a new trial. If a prosecutor were allowed to include the new trial issue in a later appeal of right, then the retrial

---

defect in the preliminary examination process, this Court instead decided that a harmless error analysis should apply.

Additionally, in *People v Thompson*, 424 Mich 118; 379 NW2d 49 (1985), the defendant sought review of the trial court's denial of his motion for directed verdict of acquittal in his appeal of right from the final judgment of conviction. Although the defendant had an appeal of right from the final judgment, the majority (CAVANAGH, J., joined the opinion of BRICKLEY, J., concurring in part and dissenting in part) held that the defendant's interests were adequately protected by the subsequent retrial of the case, and that the issue of the sufficiency of the evidence in the prior trial that ended in a mistrial did not need to be reviewed. *Id.* at 134-135. I note that three justices disagreed with that position and instead would have held that the defendant was entitled to appellate review of the sufficiency of the evidence claim *before retrial. Id.* at 136.

If, as the majority holds, an appeal from a final judgment allows the appellant to appeal prior interlocutory orders, these appellants should have been allowed to raise and receive a decision on the merits of those issues in their later appeals of right. The majority's attempts to distinguish these cases from the instant case are not persuasive. Rather, an appeal by the people from an order granting a new trial is the type that must be raised in an interlocutory appeal, or not at all.

As stated in the amicus curiae brief of the Criminal Defense Attorneys of Michigan:

> [I]f the retrial in *Thompson* adequately protected Mr. Thompson's right to be free of a conviction on inadequate evidence, it is impossible to understand how the retrial here did not protect the prosecution's right to seek a conviction based on the evidence. [*Id.* at 6.]

[8] In fact, both the Court of Appeals and this Court denied the prosecutor's application for leave to appeal.

could be rendered meaningless.[9] First, this would sub-
ject the defendant to the personal strain, expense,
and embarrassment at an unnecessary retrial. Second,
allowing the delay in appeal will result in considera-
ble expense to the state in bringing the defendant to
retrial. Third, it will take up scarce judicial resources
and time for a needless trial. Fourth, it will force
jurors to spend their valuable time and energy in
meaningless deliberations. Fifth, it will needlessly put
witnesses and victims through the anxiety and trauma
of having to testify or suffer through a retrial.

The emotional and financial costs and waste of
judicial resources can be prevented if the prosecution
is required to appeal from an order granting a new
trial immediately, if at all. Witnesses, victims, judges,
jurors, attorneys, and defendants should not be
forced to endure a retrial if that retrial can subse-
quently be rendered utterly meaningless. I believe
these policy considerations support a rule that would
require an appeal of an order granting a new trial
before the new trial occurs.

---

[9] Contrary to what the majority posits in n 28, I do not ignore the fact
that a third trial may not occur. However, a third trial would be required
if, on remand, the Court of Appeals determines that the trial court did not
abuse its discretion in granting a new trial on the basis of erroneous jury
instructions. If the new trial grant was proper, the guilty verdict of the
first trial could not be reinstated.

However, even if the Court of Appeals determines that the trial court
abused its discretion in granting a new trial, the policy reasons still
advance the dissenting position. What the majority ignores is that a retrial
already has occurred in this case. If the conviction is reinstated, then the
retrial is rendered meaningless. The ordeal, cost, and waste refer to that
trial as well as to a possible third trial. Our proposed holding would pre-
vent these costs of meaningless retrials from being realized in future
cases.

### III. CONCLUSION

I would affirm the decision of the Court of Appeals, which held that, under § 12, the prosecution may appeal an order granting a new trial only by application for leave to appeal. Legislative intent and policy considerations support this position. Further, I would affirm the holding of the Court of Appeals that the trial court erred in dismissing the charge against the defendant on the basis of the double jeopardy provision. I would remand the case to the circuit court for a retrial of the charge of possession of over 650 grams of cocaine.

LEVIN, J., concurred with CAVANAGH, J.